Robinson, J.
 

 The defendants were indicted under Section 12467, General Code, for embezzling 100 shares of stock of the Churngold Corporation, belonging to Virginia E. Guilfoyle, coming into their possession by virtue of their employment as agents by her. The cause was tried by the state upon the theory that long prior to the obtaining possession of the particular stock in question the defendants had entered into a conspiracy to obtain possession of certificates of stock of persons whom they might induce to become their customers, and to convert such stock to their own use. Upon this theory the state introduced much evidence tending to prove that as stock brokers they had received and appropriated to their own use many and valuable stocks of their clients, other than Virginia E. Guilfoyle. The defendants were not upon trial under an indictment charging an embezzlement of any such stocks, and the evidence was competent only for the purpose of showing the existence of a conspiracy, and did not absolve the state from the burden of proving that the defendants, or some of them, in person or by another, received the stock
 
 *352
 
 described in the indictment as agents of Virginia E. Guilfoyle, and that as such agents they, or some of them, unlawfully converted the same to their own use.
 

 The crime of embezzlemént, as all other crimes in Ohio, is wholly statutory. The statute, in so far as pertinent to this case, reads:
 

 “Whoever, being an * * * agent, * * * embezzles or converts to his own use, * * * anything of value which shall come into his possession by virtue of his
 
 * *
 
 * employment thereto,
 
 * * *
 
 shall be imprisoned,” etc.
 

 The state in its indictment charged the defendants with receiving stock in their capacity as agents. The averment of agency in the indictment was essential in this ease to charge the crime of embezzlement under the Ohio statute; and proof of the truth of the averment was equally essential to warrant a conviction. The evidence upon this subject of the witness Louis P. Guilfoyle was, in substance, as follows: That in the year 1918 he had purchased certain stocks of the defendants, or at least of two of the defendants; that with the exception of this transaction, prior to June 7, 1922, he had had no dealings with the defendants; that on that day he asked Mr. Ohanner, one of the defendants, at the office of the defendants, to make him a loan upon 100 shares of Churn-gold stock owned by him, and a loan to his wife, Virginia E. Guilfoyle, upon another 100 shares of the same stock, owned by her; that his wife was not present; that the witness “just asked him to give me a loan on it and give the stock for secur
 
 *353
 
 ity”; that a loan of $1,500 was made to his wife, through him as her agent, on her certificate for 100 shares, and a loan of $2,000 was made to him on his certificate for 100 shares; that he indorsed his certificate and his wife indorsed hers and both certificates were deposited with the firm of the defendants; that thereafter, on the 30th day of June, 1922, he secured an additional loan of $1,500, for the payment of which he pledged both his stock and his wife’s stock. The witness’s testimony with reference to this latter transaction is in some conflict; but whichever of his versions of that transaction is to be accepted is of no consequence in the determination of this case, since the only variation therein is whether his stock alone was pledged for the payment of this loan or whether both his stock and his wife’s were pledged.
 

 Other witnesses testified to the manner in which the accounts were carried on the books of the defendants, and to facts tending to prove a conversion of the stocks by the defendants. There was, however, no other evidence upon the subject of the capacity in which he, as the agent of his wife, acted in delivering the stock, or the capacity in which the defendants, or any of them, acted in the receipt of the stock. The manner in which the defendants handled the accounts and used the stocks of their clients, as disclosed by the record, was not such as to appeal to the charity of either the jury or the trial court, nor does it appeal to a reviewing court; but because perchance a defendant has been guilty of a violation of another or of every criminal statute of the state save the one under which he is in-
 
 *354
 
 dieted and on trial, or because perchance he may-have violated that statute as to the property of persons other than of the person named in the indictment, does not justify his conviction of a violation of that statute with reference to the property of the person named in the indictment, unless the evidence of the particular crime charged proves each essential averment of the indictment to be true. Proof of the agency of the defendants in this transaction was essential to their conviction.
 

 The crime of embezzlement in Ohio, as created by the Legislature, has been one of gradual growth. As originally enacted in 1839 (37 Ohio Laws, 75), it was applicable only to clerics and servants of private persons and of copartnerships, and to officers, agents, clerics, and servants of incorporated companies. In 1864 (61 Ohio Laws, 54), it was by the Legislature enlarged to include officers, agents, clerics, or servants of joint-stoclc companies. In 1869 (66 Ohio Laws, 29), it was enlarged to include agents of private persons and copartnerships, and to include any officer elected or appointed to any office of public trust. In 1877 (74 Ohio Laws, 249), it was enlarged to include officer and employee of any person, and to include the agent, cleric, servant, or employee of an officer elected or appointed to an office of public trust or profit, or of a board of officers. In 1881 (78 Ohio Laws, 186), it was enlarged to include attorneys at law, guardian, executor, and administrator. In 1885 (82 Ohio Laws, 140), it was enlarged to include assignee in insolvency. In 1886 (83 Ohio Laws, 23), it was enlarged to include trustee. In 1902 (95 Ohio Laws, 303),
 
 *355
 
 it was enlarged to include officer of any lodge or subordinate body of any fraternal or mutual benefit society. In 1925 (111 Ohio Laws, 101), it was enlarged to include executrix, administratrix, and receiver.
 

 It thus is apparent that the legislative construction of the crime of embezzlement during a period of 87 years has been that it is applicable only to the classes of persons described in the act itself. This court, in the case of
 
 State
 
 v. Buddeke, 83 Ohio St., 451, 94 N. E., 1115, by the affirmance of the judgment of the circuit court of Hamilton county, without report, has declared the law in Ohio to be as declared by that court- and reported in 12 O. C. (N. S.), 454, 21 O. D., 529:
 

 “Where a broker holds as collateral shares of stock belonging to a client, the relation between them is not that of principal and agent, but of debtor and creditor, and the conversion of the stock by the broker to his own use does not constitute embezzlement. ’ ’
 

 The record in that case disclosed that Buddeke acted as the agent of Schulte in the purchase of the stock; but since there was no misappropriation of the funds provided for the purchase, and since he discharged his obligation as agent in making the purchase, and thereafter held the stock as collateral on account of an unpaid balance due him from Schulte, it was held that he no longer held the stock as agent, but held it as pledgee, and having, as pledgee, converted the same to his own use, the conversion did not constitute the crime of embezzlement under the statute, since the conversion was not that of an agent.
 

 
 *356
 
 This court, in the case of
 
 Griffith
 
 v.
 
 State,
 
 93 Ohio St., 294, 297, 112 N. E., 1017, 1018, in a per curiam opinion, has declared:
 

 “To constitute embezzlement it must appear from the evidence that the accused obtained possession of the money or property claimed to have been embezzled by him by virtue of his election, appointment, or employment as an officer, attorney at law, agent, cleric, guardian, executor, administrator, trustee, assignee in insolvency, officer of a lodge or subordinate body of a fraternal or mutual benefit society, servant, or employe of a person.” (The various capacities of the custodian of the money or property enumerated being in the language of the statute as it then existed.)
 

 In the case of
 
 Lamprecht
 
 v.
 
 State,
 
 84 Ohio St., 32, 95 N. E., 656, this court declared:
 

 “Where a broker buys stock on the exchange upon the order of a customer, the latter is the owner of the stock from the time of the purchase, whether purchased in his name or not, and he has the right to the possession thereof on demand, subject to payment to the broker for advances, if any, and commissions, as to which the customer is the debtor of the broker; in other words, the legal relation of the customer and broker is that of pledgor and pledgee.”
 

 In the case of
 
 State
 
 v.
 
 Meyers,
 
 56 Ohio St., 340, 47 N. E., 138, where the court had under consideration the embezzlement statute as it then existed, it was held:
 

 “(1) A statute defining a crime or offense cannot be extended, by construction, to persons or
 
 *357
 
 things not within its descriptive terms, though they appear to be within the reason and spirit of the statute.”
 

 There was no evidence in this case tending to prove that in the particular transaction with Virginia E. Gruilfoyle the defendants were employed to do anything with her Churngold stock, other than to receive the Churngold stock as collateral security for the repayment of the loan, or to do anything for her, other than to lend her the sum of $1,500. The Legislature has not yet enlarged the embezzlement statute to include among those guilty of embezzlement the bailee who converts the bailor’s pledge to his own use. It may in the future so enlarge it; but when it does, if it does, it will operate
 
 in futuro.
 
 This is a government by law. If a wrong may be done for which there is no adequate punishment, the fault is of the Legislature and not of the courts. This court will not usurp the power of the Legislature in that respect; nor will it depart from the universal rule of strict construction of criminal statutes, because, perchance, it has before it parties who, upon the record, seem to merit punishment.
 

 A motion was made at the close of the state’s case to direct a verdict for the defendants, upon the ground that the state had failed to prove the essential averments of the indictment in respect to agency. The motion was overruled. In view of the fact that there was no evidence tending to prove agency, and, on the contrary, was affirmative evidence, being all the evidence upon the subject, that the only relationship created was that of
 
 *358
 
 debtor and creditor, bailor and bailee, the overruling of the motion was error, for which the judgment of the Court of Appeals remanding the cause for retrial will be reversed; and this court, entering the judgment which the Court of Appeals should have entered, will render final judgment for the defendants.
 

 The court finds it unnecessary to consider the other assignments of error.
 

 Judgment reversed.
 

 Jones, Matthias and Kinkade, JJ., concur.