THE STATE OF OHIO, APPELLEE, *v.* JENKINS, APPELLANT.

(No. 34198—Decided April 8, 1976.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Michael J. Occhionero,* for appellant.

MANOS, J. The defendant-appellant, Richard Jenkins, appeals from the trial court's judgment following his conviction by jury on one count of aggravated murder, R. C. 2903.01.

On July 14, 1974 at approximately 10:30 p. m. a shooting incident occurred on the west side of Cleveland that resulted in the death of Patrick Kosman. The prosecution presented evidence from nine eyewitnesses who testified to what occurred that night. The substance of their testimony was as follows: The defendant was standing in the street next to his parked car talking to some friends when Mr. Kosman, the victim, drove by. Kosman was intoxicated and told the defendant, in effect, to get out of the street. The defendant responded by telling Kosman to pull his car over, which he did. The defendant then walked to his car and took a "pump" shotgun out of the trunk. He walked to the front of his car and fired one shot into the trunk of Kosman's car. The evidence is in conflict as to whether Kosman was in the car or just getting out when the first shot was fired. Kosman moved toward the defendant (who was about 25 feet away) and was shot, spun around, and was shot again. The defendant then got into his car and drove off.

The defendant's uncorroborated testimony was that Kosman had a gun and that he had gotten out of his car and moved menacingly toward him. The defendant testified that he had fired a warning shot into the parked car and that he then shot Kosman as Kosman went for his gun. The defendant claimed that he acted in self-defense.

The trial court charged the jury on aggravated murder and self-defense. The jury returned a verdict finding the defendant guilty of aggravated murder.

The appellant assigns six errors as follows:

"1. The judgment of the trial court finding the defendant guilty of aggravated murder is against the mani-weight of the evidence and contrary to law.

"2. The trial court erred in overruling defendant's renewed motion for acquittal at the close of all evidence, in that there was insufficient evidence upon which a reason-

able mind might fairly conclude that the defendant was guilty of aggravated murder beyond a reasonable doubt.

"3. The trial court erred in overruling defendant's motion for acquittal at the close of the prosecution's evidence, in that there was insufficient evidence upon which a reasonable mind might fairly conclude that the defendant was guilty of aggravated murder beyond a reasonable doubt, in violation of defendant's constitutional privilege against self-incrimination, and due process of law.

"4. The trial court committed prejudicial error in failing to instruct the jury upon the lesser included offenses of murder and voluntary manslaughter, contrary to law and in denial of due process of law.

"5. The trial court committed prejudicial and reversible error when it instructed the jury upon the issue of self-defense that 'if the defendant had reasonable grounds and an honest belief that he was in imminent danger of death and great bodily harm, that the only means of escape from such danger was by killing such assailant * * *' all contrary to law.

"6. The trial court abused its discretion and committed prejudicial error in unduly restricting defendant's cross-examination of prosecution witnesses, through which defendant was endeavoring to establish the bias and prejudice of said witnesses."

## I.

We find the first assignment of error to be well taken, as the verdict of guilty of aggravated murder was contrary to law.

The newly amended statute, R. C. 2903.01, reads:

"(A) No person shall purposely, and with prior calculation and design, cause the death of another."

Prior calculation and design sets up a more demanding standard than the old first degree murder standard of "deliberate and premeditated malice."[1] Prior calculation

---

[1]The old statute reads: "No person shall purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery, or burglary, kill another." R. C. 2901.01, Murder in the First Degree.

and design requires the accused to have killed purposefully after devising a plan or scheme to kill. There must be some kind of studied analysis with its object being the means by which to kill. The kind of momentary deliberation or instantaneous premeditation that was the accepted standard under the old statute, as exemplified by *State* v. *Schaffer* (1960), 113 Ohio App. 125, is no longer sufficient[2] or acceptable.

The trier of fact must look to the context in which the killing occurred to determine whether there was prior calculation and design. Some of the important factors to be examined and considered in deciding whether a homicide was committed with prior calculation and design include: whether the accused knew the victim prior to the crime, as opposed to a random meeting, and if the victim was known to him whether the relationship had been strained; whether thought and preparation were given by the accused to the weapon he used to kill and/or the site on which the homicide was to be committed as compared to no such thought or preparation; and whether the act was drawn out over a period of time as against an almost instantaneous eruption of events. These factors must be considered and weighed together and viewed under the totality of all circumstances of the homicide. When the evidence adduced at trial establishes that the victim was unknown to the accused prior to the crime, and that

[2] As the drafting committee commented "By judicial interpretation in Ohio, murder can be premeditated even though the fatal act is conceived and executed on the spur of the moment. See, *State* v. *Schaffer*, 113 Ohio App. 125 (Lawarence Co. App., 1960) (sic). In the Technical Committee's view, however, it is a contradiction in terms to speak of instantaneous or nearly instantaneous premeditation. Accordingly, the Committee has employed the phrase, 'prior calculation and design,' to indicate an act of studied care in planning or analyzing the means of the crime, as well as a scheme compassing the death of the victim. Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but they must be sufficient to meet the proposed test of 'prior calculation and design.' In this context, momentary deliberation is considered insufficient to constitute a studied scheme to kill."

there was little or no preparation, but rather that the crime was an instantaneous eruption of events, then the trial court shall not charge the jury on aggravated murder. If the evidence adduced at trial is legally insufficient to establish any essential element of the crime charged the trial court shall not charge the jury as to that offense. See, *State* v. *Channer* (1926), 115 Ohio St. 350; *State* v. *Manago* (1974), 38 Ohio St. 2d 223.

With this in mind, we turn to the facts of the case on appeal.

From the record it is clear that the defendant did not know the victim, that there had been no previous disagreement, and that the meeting was at random.[3] There is no evidence to indicate any prior preparation to commit a homicide. The incident was not drawn out but was almost spontaneous. That the defendant went to his car, removed a shotgun, and fired a shot in the trunk of the car and two shots at the victim is not, standing alone, evidence of prior calculation and design. The court therefore was in error in allowing the case to go to the jury on the charge of aggravated murder as the evidence was " * * * insufficient to sustain a conviction of such offense * * *." Criminal Rule 29(A). The evidence produced was sufficient to sustain a finding of guilty to murder, R. C. 2903.02, as there was evidence that the defendant purposefully killed the deceased.

## II.

The second and third assignments of error are without merit except as section one of this opinion applies. The court properly found that there was "a great deal of evidence" on each of the elements required to convict the defendant of murder. As long as reasonable minds can reach different conclusions on the evidence, then the question is properly one for the jury. *State* v. *Swiger* (1966), 5 Ohio St. 2d 151.

---

[3]The simple fact that the accused did not know the victim is not conclusive on the issue of whether there was "prior calculation and design." If evidence was adduced that the defendant had planned to kill someone at random, that would be sufficient to send the case to the jury. There was no such evidence in the case before us.

### III.

The fourth and fifth[4] assignments of error are without merit as the instructions given by the trial court were not objected to as required by Criminal Rule 30.[5]

Because of the importance in giving proper instructions to the jury and the confusion as to when an instruction on a lesser included offense is required, we reach the merits of the fourth assignment of error. It is true that the defendant in the trial at bar interposed the affirmative defense of self-defense. Nevertheless, we are not precluded by that fact from permitting the jury to consider the lesser included offense of murder. Despite the fact that the prosecutor has so urged, the rule enunciated in *State* v. *Nolton* (1969), 19 Ohio St. 2d 133, 135 does not compel us to ignore a record which does not support the degree of homicide of which the accused was ultimately convicted.

In *Nolton,* the Supreme Court attempted to articulate "a more utilitarian rule" than the general formula that in all cases "where the evidence would support a lesser included offense," *Id.* at 134, the jury should be so charged and permitted to return such a verdict. Formulating a new rule, the court said:

"If the evidence adduced on behalf of the defense is such that if accepted by the trier it would constitute a complete defense to *all* substantive elements of the crime charged, the trier will not be permitted to consider a lesser included offense for the reason that an unreasonable compromise would be invited on the state's evidence." *Id.* at 135.

This court does not interpret this language to mean

---

[4] There would be no error present in any event, as the instruction as to self-defense was substantially equivalent to the one approved in *Graham* v. *State* (1918), 98 Ohio St. 77, 78-79.

[5] Criminal Rule 30 states in part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

that in any case in which an accused asserts an affirmative defense, a trial or appellate court is, for that reason alone, prevented *per se* from considering the degree of homicidal guilt which the evidence in the record should permit to be submitted to the trier of fact. As to that aspect of the case-in-chief, the burden rests squarely on the prosecution; the court is accordingly compelled to consider whether the state has met its burden of proof, beyond a reasonable doubt, as to every element of the offense charged *whether or not the accused interposes an affirmative defense at trial*. The rule is not automatic; its application depends on the state of the record in each case, whether on the evidence the jury could reasonably conclude that the state had proved only the elements of a lesser included offense, and not all of the elements of the principal charge. This must be so because if the bare assertions of an affirmative defense is a waiver of the right of the accused to have submitted to the jury the appropriate offenses which the evidence supports the defendant and the state are denied the right to have the verdict conform to the evidence.

The *Nolton* language which immediately follows the above quoted verbal formula is instructive; it limits substantially the previously stated *Nolton* rule:

"On the contrary, if the trier could reasonably find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense, *then a charge on the lesser included offense is both warranted and required,* not only for the benefit of the state but for the benefit of the accused." *Id.* at 135. (Emphasis added.)

The facts in *Nolton* bolster our interpretation of its holding. In that case, intentional shooting was clearly proved by the state. The only question was whether such intentional shooting was *justifiable* by reason of self-defense. To have permitted the jury to return a verdict on a lesser included offense without *intent* as one of its elements would have permitted the trier of fact the option to return

an unreasonable compromise verdict which the rule was specifically designed to avoid.

Similarly in *State* v. *Fox* (1972), 31 Ohio St. 2d 58, the Supreme Court applied the *Nolton* formula to prohibit the jury from considering a lesser included offense of manslaughter where the principal charge was murder in the second degree. The evidence clearly demonstrated an *intentional* killing; the only factual question was whether the accused intentionally killed with justification, *i. e.* in self-defense, or not. Thus conviction of the lesser included offense of manslaughter, which does not include intention to kill, would have been an unreasonable result on that record. Conversely, in the instant case, both the principal charge, aggravated murder, and the lesser included offense, murder, require proof of the element of intent. Intent to kill, with or without justification was clearly shown by the record here.

But with respect to the element of prior calculation and design which separates aggravated murder from its lesser incuded offense of murder the jury could reasonably have concluded, once having rejected the affirmative defense of self-defense, either that prior calculation and design had been proved or that it had not. Under such circumstances, the lesser included offense should have been charged to the jury, even though the affirmative defense, if believed by the jury, would have been a complete defense to all the substantive elements of the principal charge.

## IV.

The sixth assignment of error is held to be without merit. The defendant claims he was improperly denied the right to cross-examine the eyewitnesses as to certain prior events which would have effectively impeached their testimony but the defendant himself was allowed to testify as to the possible hostility of some of the prosecution's witnesses, and the reason for that hostility. Though we believed that cross-examination should have been allowed as to possible bias of those witnesses, it was harmless error in the context and circumstances of the case, and in light of the evidence adduced. As the Supreme Court said in

*Michigan* v. *Tucker* (1974), 417 U. S. 433, 446, "* * * the law does not require that a defendant receive a perfect trial, only a fair one * * *."

A modification of the judgment is required. The cause is hereby remanded to the trial court with the instructions that judgment be entered finding defendant-appellant guilty of murder under R. C. 2903.02, and that sentence be pronounced accordingly.

*Judgment accordingly.*

Day, P. J., and Parrino, J., concur.