OPINION
Defendant, Lashar Winton, appeals from a decision of the Franklin County Court of Common Pleas finding him guilty of aggravated murder in violation of R.C. 2903.01. Defendant contends the conviction is supported by insufficient evidence and is against the manifest weight of the evidence, as the state failed to prove beyond a reasonable doubt that defendant acted with prior calculation and design.
Defendant's conviction is the result of events which occurred on October 6, 1997 near the intersection of Columbus and Lockbourne Avenues in Franklin County, Ohio. The events that led to Paul Arnold's death began when Paul and his friend, Travis Tucker, skipped school. The two spent the morning together in their neighborhood near East High School. In the afternoon, Paul and Travis went to pick up Paul's brother, Brandon, from the bus stop because neighborhood kids associated with the Bloods gang had been harassing him on account of the color of his school uniform. Brandon wore blue pants and a white shirt, colors frequently associated with the Crips, a rival gang of the Bloods. As Paul and Travis waited for the bus, defendant passed them, "rapping" about the Bloods. Defendant then walked onto the front porch of a nearby house. While waiting for Brandon to get off the bus, Paul reached into his right back pocket and pulled out a black bandanna. Realizing the significance of the bandanna,[1]
he quickly gave it to Travis, who stuffed it in his pocket. The boys waited for Brandon a few more minutes, then started to walk home.
Defendant, a member of the Bloods, recognized the black bandanna as a Crips symbol. Defendant went inside the house and retrieved a gun. Defendant gave the gun to his friend, Omar Jones, a fellow member of the Bloods. The two followed Paul and Travis for a couple of blocks. When Paul and Travis crossed the street, Omar and defendant approached them while other Bloods converged on the scene. One of the Bloods apparently knew Paul and asked him what was going on. Paul explained that everything was "cool," but defendant swiftly took the gun from Omar's hand and shot Paul, once in the ribs and again in the shoulder after Paul had fallen to the ground. Immediately thereafter, everyone fled the scene. Travis returned, however, to help his friend. Travis helped Paul across the street before Paul collapsed on the corner and died. Police were then summoned to the scene and an investigation followed. From a photographic display, Travis identified defendant as the killer.
Travis's account of the shooting was corroborated by Sandra West. She testified that as she got into her friend's car to go to the bank, she saw defendant shoot Paul twice. Additionally, Edward Ramzy, a resident of the area, testified that he saw Omar and defendant flee from the shooting. Defendant was wearing a red bandana and carrying a gun. Based on the evidence and after deliberation, the jury found defendant guilty of aggravated murder.
Defendant now appeals and asserts the following assignment of error:
 The conviction for aggravated murder is against the manifest weight of the evidence and is not supported by sufficient evidence as the state did not prove beyond a reasonable doubt that the defendant acted with prior calculation and design.
To be convicted of aggravated murder in Ohio, pursuant to R.C. 2903.01, the state must prove beyond a reasonable doubt that the defendant acted with prior calculation and design. Although the phrase "prior calculation and design" is not defined in the statute, the Ohio Supreme Court has interpreted the phrase to require proof of "more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." State v. Cotton (1978), 56 Ohio St.2d 8,11.
In State v. Jenkins (1976), 48 Ohio App.2d 99, 102, the court outlined three factors to consider in determining whether a defendant killed with prior calculation and design: 1) whether the accused and the victim knew one another prior to the killing, and, if so, the nature of their relationship; 2) whether the accused gave thought or preparation to the method or place of the killing; and 3) whether the act was drawn out over a period of time or occurred almost instantaneously. The Jenkins determinants indicate whether the circumstances surrounding the homicide show a scheme designed to further the intended killing. Id.
Regarding the first factor, there was no evidence at trial to show that defendant knew Paul prior to the day of the shooting. However, there was evidence that one of defendant's fellow gang members knew Paul and that Travis knew Omar.
As to the second factor, evidence demonstrating that defendant took a gun from his house when he saw Paul's black bandana indicates that he planned ahead and equipped himself for a deadly confrontation. Furthermore, defendant and Omar approached Paul, displaying a gun. The thought or preparation required byJenkins' second factor is fulfilled by defendant's decision to obtain a gun and approach Paul in the street after he observed Paul display the bandana. Defendant decided to use a gun as the method of killing Paul. The street is the place defendant chose for the shooting.
Defendant maintains that there was insufficient evidence to establish that the shooting was anything more than his instantaneous reaction to Paul's display of the Crips' gang colors. Upon appellate review, it is this court's duty to determine whether a rational trier of fact who construes the evidence in a light most favorable to the prosecu-tion could find the essential elements of aggravated murder, e.g., prior calculation and design, proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259.
Defendant had ample time to contemplate his actions between the time he initially observed Paul display the bandanna and the time he shot him. Rather than shooting Paul the instant he saw the bandanna, he instead spoke with Omar, obtained a gun, followed Paul, asked him what was going on and then shot him, thus satisfying the third factor from Jenkins. From these facts, a rational jury could find the state proved beyond a reasonable doubt that defendant acted with prior calculation and design when he shot Paul.
Defendant further assigns error on the grounds that the trial court's conviction is against the manifest weight of the evidence. In State v. Conley (Dec, 16, 1993), Franklin App. No. 93AP-387, unreported (1993 Opinions 5437, 5438), this court noted that appellate review does not require the evidence to be construed in a light most favorable to the state. The appellate court must perform a "limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." Id.
Upon careful examination of the record and analysis of the law, this court finds that the jury's decision is supported by appreciable amounts of convincing evidence. Specifically, this court finds that three distinct facts demonstrate that the murder was committed with prior calculation and design. First, a considerable amount of time passed between the time defendant initially encountered Paul and the time of the shooting. Second, defendant pursued Travis and Paul with a firearm. Third, and perhaps most importantly, defendant took the gun from Omar, grasped it firmly, pointed it at Paul and shot him twice.
Columbus Police Officer Brian Wildman testified about the general nature of gangs. He indicated that most gang crimes are not well-formulated operations that require elaborate planning. On the contrary, most incidents occur after a brief interaction with the enemy, followed by a short interlude when the gang members devise a plan of attack. This rough chronology matches the events surrounding Paul's death. Defendant saw Paul and Travis, chanted a few gang-related phrases, went to his house, talked to his friend, Omar, and got a gun. He then caught up to Paul and Travis, took the weapon from Omar and shot Paul twice. Defendant had time to confer with Omar and access a weapon. While the actions taken by defendant were not complex, "[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves." State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 196, quoting the Legislative Service Commission Comment to R.C. 2903.01. The actions taken by defendant were both deliberate and designed. Defendant viewed Paul as a Crip and decided to eliminate the threat posed by a rival gang member by killing him. Defendant had many opportunities to ignore Paul, drop the matter or walk away, but he chose to grab the gun from Omar and execute Paul.
Having reviewed the evidence presented at defendant's trial, this court finds the verdict is not against the manifest weight of the evidence. Sufficient, credible evidence exists to uphold the trial court's conviction of aggravated murder, based on a finding of prior calculation and design, pursuant to R.C.2903.01. Furthermore, the evidence is sufficient to prove beyond a reasonable doubt that defendant acted with prior calculation and design when he shot Paul Arnold on October 6, 1997.
For the foregoing reasons, defendant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, J., and LAZARUS, P.J., concur.
[1] The Crips official colors are blue and black or white and black. The Bloods official colors are red and black. One way each group displays its colors is by keeping a red or black bandanna, called a "flag" or "rag," in a back pocket of the pants. Bloods keep a red "rag" in the left back pocket and Crips keep a blue or black "rag" in the right back pocket. Displaying a gang's colors in the opposing gang's neighborhood is seen as a sign of disrespect and is viewed as an antagonistic or aggressive act.