JOURNAL ENTRY and OPINION
Defendant-appellant Maurice Freeman appeals from his conviction after a jury trial for aggravated murder with firearm specifications.
Freeman challenges his conviction on the basis the state failed to present sufficient evidence to establish the element of prior calculation and design. After a thorough review of the record, this court disagrees. Freeman's conviction, therefore, is affirmed.
Freeman's conviction results from a series of events that occurred in the early morning hours of July 25, 2001. At approximately 3:30 a.m., Freeman presented himself at the home of his seventeen-year old friend, Lekeia Staples. Staples lived with her grandmother in the upstairs unit of a house located near the corner of East 115th Street and Superior Avenue in Cleveland, Ohio.
At that hour of the morning, Lekeia's grandmother still was entertaining a number of friends; therefore, Freeman's request to use Lekeia's telephone created no difficulties. Lekeia retrieved the cordless telephone while Freeman waited on the downstairs porch. She then stood by as Freeman made his call.
A few moments later, Lekeia saw an automobile traveling on East 115th Street. Just as the vehicle turned onto Beulah Avenue, Freeman called out loudly the name Thurl. Lekeia knew the name; Thurlon Hill had been a friend of hers and Freeman's for over ten years. At the sound of Freeman's voice, the automobile halted its progress and reversed its direction. Freeman handed Lekeia the telephone and walked over to the automobile. The passenger door opened, thus permitting Freeman access to the rear passenger seat. Once Freeman was inside, the vehicle continued on its way. Lekeia returned to the second-floor unit.
The vehicle belonged to the victim, Alphonso Amos. With him, seated in the front passenger seat, was Thurlon Hill. Freeman was inside the vehicle only a short time before Hill heard a shot fired. At Freeman's trial, Hill testified he turned toward the sound to see Freeman pulling the gun back. Amos was frantically grabbing at Freeman's hands in an attempt to snatch the weapon away. With the driver's attention thus diverted, Amos' vehicle struck a utility pole and stopped.
Amos at that time abandoned both his attempt to disarm Freeman and his automobile. He exited the vehicle and proceeded to run down East 115th Street. He was bleeding onto the pavement as he ran. Amos traveled only a short distance before collapsing onto the sidewalk.
The sound of the weapon's discharge drew the attention of people in the vicinity. John Bland, who had been in the process of leaving Lekeia's grandmother's residence, had reached the driveway when he saw Amos' vehicle strike the utility pole. Bland continued to watch; he saw the driver leap out, run a short distance, and then fall. After Amos dropped to the sidewalk, Bland saw the vehicle travel in reverse away from the pole, hesitate briefly, and slowly proceed on the street toward him. When the vehicle was next to the victim where he lay, Bland heard another gunshot. The vehicle then was driven away.
The gunfire had prompted one of the neighbors to telephone emergency services; therefore, members of the Cleveland Police Department arrived within minutes. One of the officers, John Douglas, saw that the victim was bleeding from at least two wounds.
Amos initially could not answer Douglas' partner as she attempted to pose questions because he was screaming and writhing in pain. However, as additional officers arrived, Amos seemed to understand they needed information. Thus, when Kevin Freese asked Amos if he knew who shot him, Amos eventually managed to respond, stating, Maurice Freeman. Douglas also heard Amos' response.
Although Amos was transported to the hospital, efforts to save his life proved fruitless. The subsequent autopsy of his body showed he had received two gunshot wounds. The fatal one had entered Amos' left chest and traveled in a downward direction, passing through his rib cage, lungs, diaphragm, liver, renal artery, and colon until it exited at the right side of the abdomen. The stippling effect on the chest indicated this shot had been fired at close range.
The second wound was to Amos' right shoulder. That bullet had remained in the body and was recovered from the upper arm. The absence of any trace evidence near the wound on Amos' shoulder indicated the weapon had been fired at him from some distance away to make the second wound. Additionally, forensic analysis of Amos' hands showed they lacked trace evidence of having been in contact with any metal object, such as a gun, prior to his death.
Amos' statement naming his assailant, together with other witness statements, led to Freeman's eventual arrest and indictment. The indictment, as amended just prior to Freeman's trial, charged him on three counts as follows: aggravated murder, R.C. 2903.01(A), with two firearm specifications (murder with prior calculation and design); aggravated robbery, R.C. 2911.01, with two firearm specifications; and having a weapon while under disability, R.C. 2923.13.
Freeman elected to have the final count tried to the bench; therefore, his case proceeded to a jury trial on the first two counts. The state presented the testimony of the forensic analysts, Lekeia Staples, Thurlon Hill, John Bland, and several of the police officers who had responded to the scene the night of the shooting.
The jury ultimately found Freeman guilty of aggravated murder with firearm specifications and not guilty of aggravated robbery. After the trial court found Freeman guilty of the remaining count, it sentenced Freeman to concurrent terms of incarceration of three years on the firearm specifications, twenty years to life on the aggravated murder charge, and one year on the weapon charge.
Freeman presents the following as his only assignment of error:
 1. The evidence introduced by the state of Ohio was insufficient to prove that Maurice Freeman acted with prior calculation and design in purposefully causing the death of Alphonso Amos.
Freeman argues the state failed to sustain its burden to prove he committed the murder of Amos with prior calculation and design. A review of the totality of the evidence renders Freeman's argument unpersuasive.
This court is required to view the evidence adduced at trial, both direct and circumstantial, in a light most favorable to the prosecution to determine if a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421; 1997-Ohio-372; State v. Jenks (1991),61 Ohio St.3d 259.
In considering an argument such as Freeman's the test is whether the evidence reveals the presence of sufficient time and opportunity for the planning of an act * * *, and the circumstances * * * show a scheme designed to implement the calculated decision to kill * * *. State v. Cotton (1978), 56 Ohio St.2d 8, paragraph 3 of the syllabus; see also, State v. Moreland (1990), 50 Ohio St.3d 58; State v. Taylor,78 Ohio St.3d 15, 1997-Ohio-243.
Viewing the evidence adduced at Freeman's trial in a light most favorable to the state leads to the conclusion Amos' murder was a planned act.
Hill admitted he, Freeman and Amos all were members of the Rockland gang, which was engaged in the business of selling drugs. Lekeia Staples testified that she waited with Freeman only a short time after he made his telephone call before a vehicle arrived. Hill also admitted he had obtained a ride with Amos, and when they arrived in the area of East 115th Street and Superior Avenue they stopped for Freeman to enter Amos' vehicle.
Lekeia indicated she had spent some time after Freeman left helping one of her grandmother's friends take her children downstairs before she again observed the vehicle. She heard a sound like a firecracker. She and Bland, who by that time also stood in the driveway, saw Amos' vehicle strike the utility pole and Amos' attempt to flee. Bland then watched as the assailant drove Amos' vehicle over to where he lay before the second shot was fired. Amos named Freeman as the man who had shot him.
The summoning of Hill by Freeman, the length between the time Freeman entered Amos' vehicle and the first gunshot, Hill's failure to indicate any argument occurred while he and Freeman were in Amos' vehicle, the stippling near the fatal wound that indicates the shot was fired at point-blank range, the trail of blood left by Amos as he ran, and the deliberate nature of the firing of a second shot at Amos when he lay helpless on the ground, all indicate the necessary studied analysis of a plan and method of attack. State v. Taylor, supra, cf., State v. Jenkins (1976), 48 Ohio App.2d 99.
Therefore, sufficient evidence supported Freeman's conviction for aggravated murder in violation of R.C. 2903.01(A). State v. Johnson, Cuyahoga App. No. 76999, 2001-Ohio 4134; State v. Jenkins (Feb. 10, 2000), Cuyahoga App. No. 75343. Freeman's assignment of error, accordingly, is overruled.
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the court of common pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J. and JAMES J. SWEENEY, J. CONCUR.