JOURNAL ENTRY AND OPINION
{¶ 1} On July 5, 2005, a Cuyahoga County Grand Jury indicted defendant-appellant Videll Schumpert ("Schumpert") on one count of aggravated murder with a firearm specification. For the reasons set forth below, we affirm.
 {¶ 2} On August 21, 2006, the case proceeded to jury trial, and on August 31, 2006, the jury found Schumpert guilty of aggravated murder with a firearm specification. On September 22, 2006, Schumpert was sentenced to life imprisonment with eligibility for parole after serving thirty years. Schumpert was also sentenced to an additional three-year term for the firearm specification to be served prior and consecutive to the aggravated murder sentence. *Page 3 
 {¶ 3} The facts giving rise to the instant action occurred on May 1, 2005, at approximately 3:30 a.m., in the parking lot adjacent to the Best Steak Gyro House on Eddy Road in East Cleveland, Ohio. The victim, Marcus Johnson ("Johnson"), met friends Karen Knight ("Knight"), Amir Shareef ("Shareef"), Seanna Perry ("Seanna") and Jayson Perry ("Jayson") at the Best Steak Gyro House.
 {¶ 4} Johnson and Seanna were the only individuals present in Knight's vehicle. A man later identified as Schumpert approached the vehicle and opened fire, shooting nine rounds into the vehicle. Two bullets struck and killed Johnson. Schumpert got into a car and left the scene.
 {¶ 5} Seanna collected and concealed Johnson's cellular phone and gun from the scene and did not produce them until a later time. Bystander Janice Evans ("Evans") exited her vehicle to assist Johnson. Evans called 9-1-1. The others were inside the restaurant.
 {¶ 6} Knight and Shareef were dating each other at the time. Seanna and Jayson were married but separated and had two children. Johnson and Jayson knew Schumpert through their friend Grady Wells ("Wells") because Wells married Schumpert's sister, Ada Schumpert ("Ada").
 {¶ 7} Schumpert and Johnson were drug dealers. During the week leading to the shooting, Schumpert attempted to contact Johnson via Jayson and Shareef because Schumpert believed that Johnson absconded with drugs *Page 4 
belonging to him. Schumpert made statements that he would "pop" or kill Johnson.
 {¶ 8} Schumpert timely appealed and asserts four assignments of error.
 {¶ 9} ASSIGNMENT OF ERROR NUMBER ONE
 "The trial court erred in failing to strike the testimony of Grady Wells and Harvey Bruner as it related to Rule of Evidence 404(B) and the prior acts of the defendant-appellant."
 {¶ 10} Schumpert argues that the trial court erred in admitting testimony from Wells and Harvey Bruner ("Bruner") because the testimony violated Evid.R. 404(B). We disagree.
 {¶ 11} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 12} Evid.R. 404 states, in part:
 {¶ 13} "(A) Character evidence generally.
 Evidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions: *Page 5 
 (1) Character of the accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; * * *.
 * * *
 (B) Other crimes, wrongs or acts.
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 14} Evid.R. 405 states in part:
 "(A) Reputation or opinion.
 In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 (B) Specific instances of conduct.
 In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
 {¶ 15} First, Schumpert argues that the trial court erred when it permitted, over objection, testimony elicited from Wells by Ms. Skutnik as follows:
 "Q. Did you ever invite Mr. Schumpert to go out with you to the bar or to go watch a game or do something social?
 We went to the bar a couple times when he first came home from jail, yeah, I took him out to the bar. *Page 6 
 Mr. Schlachet: Objection. Can we come up, Judge?
 The Court: All right. You can come up. Objection sustained. The jury will disregard the answer. * * *" Tr. 789.
 {¶ 16} We do not find that the trial court abused its discretion because it sustained defense counsel's objection and advised the jury to disregard Wells' answer.
 {¶ 17} Next, Schumpert argues that the trial court erred in admitting the following testimony elicited from Wells by Ms. Skutnik:
 "Q. Now, when we — earlier we were discussing the defendant in this matter, Videll Schumpert. Do you recall that?
 Yeah, yeah.
 And that would be your brother-in-law, correct?
 Yes.
 Okay. And, I asked you if you had ever socialized with Mr. Schumpert in 2004, 2005 after meeting him?
 Yes.
 And, have you?
 Yes.
 And, did you prefer to have Mr. Schumpert around or to have Mr. Schumpert join you and your other friends when you would be out, out socializing?
 No.
 MR. SCHLACHET: Objection.
 THE COURT: Overruled. *Page 7 
 I'm sorry?
 No.
 Why was it that you did not want him around?
 MR. EMOFF: Objection.
 THE COURT: Overruled.
 Because of the nature of his character." Tr. 792-93.
 {¶ 18} A review of the record reveals that the aforementioned testimony was not used for rebuttal purposes because the defense had not offered character evidence. See Evid.R. 404(A)(1). Nor does the testimony at issue appear to address motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Evid.R. 404(B).
 {¶ 19} However, Crim.R. 52(A) addresses harmless error and states in part: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." The defendant bears the burden of demonstrating that the alleged error affected a substantial right. State v. Biehl (1999), 9th Dist. No. 19054, 1999 Ohio App. LEXIS 1720. "Prejudicial evidence is harmless beyond a reasonable doubt, where the remaining evidence standing alone constitutes overwhelming proof of a defendant's guilt." State v.Lutz, Cuyahoga App. No. 80241, 2003-Ohio-275; see, also, State v.Williams (1983), 6 Ohio St.3d 281. Here, the remaining evidence presented by the State, standing alone, *Page 8 
constitutes overwhelming proof of defendant's guilt, even in light of the aforementioned testimony. Thus, it cannot be said that Schumpert's substantial rights were affected.
 {¶ 20} Lastly, Schumpert cites to testimony elicited from his former employer and former attorney, Harvey Bruner ("Bruner"), by Ms. Skutnik, and argues that the trial court erred in admitting the testimony because it constitutes improper character evidence. Schumpert argues that the prosecution already established that Schumpert owned the cellular phone at issue via Shareef s testimony. The challenged testimony was elicited from Bruner by Ms. Skutnik, as follows:
 "Q. And, Mr. Bruner, do you know the defendant in this matter, Videll Schumpert?
 A. I do.
 Q. And, was Mr. Schumpert employed with your law firm at some point in time?
 A. Yes.
 Q. And, when was it that Mr. Schumpert was an employee of yours?
 A. 2004, 2005, 2003. I'm not exactly sure.
 Q. And, in what manner was Mr. Schumpert employed by your office?
 A. He was employed as an investigator, a runner, went and talked to witnesses, find people for me, things I need done in — *Page 9 frankly, neighborhoods I couldn't go into — or wouldn't go into, let's put it that way.
 Q. Mr. Bruner, do you recognize the cellular phone number of area code 216-310-3264?
 A. Yes.
 Q. And, where do you recognize that cell phone number from, sir?
 A. I recognize it from a hearing we had last week to be honest with you, but yes, I recognize it.
 Q. Mr. Bruner, while Mr. Schumpert was in your employment, did he obtain a cellular phone from the Alltel Corporation?
 A. I wasn't involved in it, but, yes, I believe he did.
 Q. Well, did you come to learn that Mr. Schumpert had a cellular phone with that phone number that was registered in your name?
 A. Yes.
 Q. Mr. Bruner, I'm handing you what's been marked for identification purposes action (sic) State's Exhibit 200. Have you had a prior opportunity to review that document?
 A. Yes.
 Q. And, do you recognize that document as being Alltel records for the phone number that I had just read out loud to you?
 A. Yes.
 Q. Now, does it appear from those telephone records, Mr. Bruner, that that (sic) phone was listed in your name?
 A. That's what it says, yes. *Page 10 
 Q. And, does it have your office address there as the account — for the account information?
 A. Yes.
 Q. And, to your knowledge, Mr. Bruner, did you ever use that cellular phone?
 A. No.
 Q. And, do you know who — who utilized that cellular phone that was purchased in your name?
 A. Videll Schumpert." Tr. 1071-73.
 {¶ 21} A review of the transcript reveals that Schumpert's counsel made no objection to the challenged portion of Bruner's testimony. Failure to object to testimony waives all but plain error. Crim.R. 52(B); Evid.R. 103(D); State v. Childs (1968), 14 Ohio St.2d 56. Thus, Schumpert has the burden of establishing that, "the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." State v. Waddell, 75 Ohio St.3d 163, 1996-Ohio-100.
 {¶ 22} Bruner's testimony was not used for rebuttal purposes pursuant to Evid.R. 404(A). However, pursuant to Evid.R. 404(B), Bruner's testimony goes to identity. Schumpert is correct in asserting that the prosecution, via Shareef s testimony, established that Schumpert's cellular phone number was 216-310-3264. However, the jury, when deliberating and in receipt of cellular phone records for 216-310-3264 would note Bruner's name and address on the records *Page 11 
and not Schumpert's name and address on the records. As such, the prosecution also needed to establish that Bruner was not the owner of the cellular phone that made calls prior to and after Johnson's murder and within the vicinity of the crime scene. Therefore, Bruner's testimony assisted the prosecution in identifying Schumpert as the offender and does not give rise to plain error.
 {¶ 23} Schumpert's first assignment of error is overruled.
 {¶ 24} In light of the fact that Schumpert's second and third assignments of error are related, and in the interest of judicial economy, we will address these assignments of error together.
 ASSIGNMENT OF ERROR NUMBER TWO
 "The trial court erred when it convicted defendant-appellant of aggravated murder on insufficient evidence."
 ASSIGNMENT OF ERROR NUMBER THREE
 "The trial court erred when it denied the defendant-appellant's Criminal Rule 29 motion for acquittal based upon insufficient evidence."
 {¶ 25} Schumpert asserts that there is a lack of sufficient evidence to establish the element of prior calculation and design and also to establish the identity of the perpetrator of the crime. Additionally, Schumpert argues that the trial court erred in denying his Crim.R. 29 motion for acquittal because there is not sufficient evidence to establish the element of prior calculation and design. We disagree. *Page 12 
 {¶ 26} In reviewing a challenge to sufficiency of evidence, the Ohio Supreme Court set forth the following standard:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 27} Crim.R. 29(A), which governs motions for acquittal states:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 28} R.C. 2903.01, sets forth the crime of aggravated murder, and states: "No person shall purposely, and with prior calculation and design, cause the death of another * * *."
 {¶ 29} Regarding prior calculation and design, "There is no bright-line test to determine whether prior calculation and design are present. Rather, each case must be decided on a case-by-case basis."State v. Braden, 98 Ohio St.3d 354, 2003-Ohio-1325. However,
 "Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior *Page 13 calculation and design is justified." State v. Cotton (1978), 56 Ohio St.2d 8, paragraph three of the syllabus.
 {¶ 30} Specifically, the Ohio Supreme Court set forth the following:
 "The trier of fact must look to the context in which the killing occurred to determine whether there was prior calculation and design. Some of the important factors to be examined and considered in deciding whether a homicide was committed with prior calculation and design include: whether the accused knew the victim prior to the crime, as opposed to a random meeting, and if the victim was known to him whether the relationship had been strained; whether thought and preparation were given by the accused to the weapon he used to kill and/or the site on which the homicide was to be committed as compared to no such thought or preparation; and whether the act was drawn out over a period of time as against an almost instantaneous eruption of events. These factors must be considered and weighed together and viewed under the totality of the circumstances of the homicide. "State v. Jenkins (1976), 48 Ohio App.2d 99.
 {¶ 31} In applying the law to the facts of this case, we find that there exists sufficient evidence to establish prior calculation and design. Schumpert knew Johnson prior to the crime. The relationship between Schumpert and Johnson was strained because of bad dealings regarding a drug transaction and counterfeit money.
 {¶ 32} Further, Schumpert gave thought and preparation regarding the site where the homicide was committed. For example, Jayson testified as follows:
 "Q. Did he [Schumpert] say anything else to you other than you better find him [Johnson]?
 Just threatening Turtle's [Johnson's] life saying, you know, you don't want to mess with a guy like me.
 * * * *Page 14 
 Q. [Did] he elaborate * * * as to what his comment meant?
 Said he will pop Turtle if he don't find him.
 Q. Okay. And, the use of the word pop, is that street language?
 That means shoot.
 Q. That means to shoot somebody?
 Yes." Tr. 532-533.
 {¶ 33} Additionally, Schumpert made repeated calls to Jayson every ten to twenty minutes throughout the day prior to Johnson's homicide. Tr. 538. Schumpert made these calls in order to apprise himself of Johnson's whereabouts. Tr.538. Jayson testified that Schumpert, "[c]alled * * * all the way up till the death of Marcus Johnson." Tr. 540. Shareef confirmed dozens of cellular phone calls Schumpert made to him in the twenty-four hours preceding Johnson's homicide. Tr. 401-402. While the aggravated murder in the instant case may appear to have been an instantaneous eruption of events, in reviewing the totality of the circumstances, it remains clear that Schumpert committed the homicide with prior calculation and design.
 {¶ 34} Next, Schumpert argues that there is not sufficient evidence to establish his identity as the perpetrator of the crime. However, Seanna identified Schumpert as the offender. Seanna confirmed her identification on two occasions: first, when Jayson provided her with a photograph of Schumpert shortly after the homicide, and second, with the police in a photo line-up. *Page 15 
Seanna also saw Schumpert before the homicide at Jayson's house when she arrived to pick up her children. Additionally, cellular phone records demonstrate that Schumpert was near the scene of the crime during the time in question.
 {¶ 35} Therefore, in reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could also identify Schumpert as the perpetrator of the crime in question.
 {¶ 36} Lastly, Schumpert argues that the jury made improper use of inference to find the element of prior calculation and design as well as in establishing his identity as the perpetrator of the crime, and thus there is not sufficient evidence in the instant case. The Ohio Supreme Court held the following regarding inferences:
 "1. An inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in by a jury.2. An inference which is based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in by a jury." Hurt v. Charles J. Rogers Trans., Co. (1955), 164 Ohio St. 329, paragraphs one and two of syllabus.
 {¶ 37} Based upon our foregoing analysis, and a thorough review of the trial transcript, it cannot be said that the jury improperly made any, "[i]nference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts * * * regarding prior calculation, design and identity." Thus, in reviewing the evidence in a light most favorable to the *Page 16 
prosecution, we find that any rational trier of fact could find the element of prior calculation and design as well as Schumpert's identity beyond a reasonable doubt.
 {¶ 38} Schumpert's second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR
 "The trial court erred when it convicted defendant of aggravated murder because the verdict was against the manifest weight of the evidence"
 {¶ 39} Schumpert argues that the verdict is against the manifest weight of the evidence for lack of evidence regarding prior calculation and design identification. Specifically, Schumpert argues that the credibility of the witnesses is so lacking that the verdict is against the manifest weight of the evidence. We disagree.
 {¶ 40} In evaluating a claim that the verdict is against the manifest weight of the evidence, the Ohio Supreme Court set forth the following standard of review:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. *Page 17 
 {¶ 41} Pursuant to the aforementioned case law, and in applying the facts on the record to R.C. 2905.01, we find that there exists substantial evidence for the trier of fact to find Schumpert guilty of aggravated murder beyond a reasonable doubt.
 {¶ 42} Schumpert argues that Seanna's testimony lacks such credibility that the verdict is against the manifest weight of the evidence. Schumpert cites to the fact that Seanna was smoking marijuana with Johnson in the moments leading up to the shooting, which may have impaired her ability to accurately identify the perpetrator. However, Seanna saw Schumpert prior to the shooting at Jayson's house while she was not under the influence of marijuana, which the jury may have considered in weighing her identification of the perpetrator. Schumpert also challenges Seanna's credibility because she concealed Johnson's handgun and cellular phone from the police shortly after the shooting.
 {¶ 43} Schumpert argues that Shareef lacks credibility, citing to his prior criminal record including drug charges, assault, and abduction. Lastly, Schumpert argues that Wells' testimony lacked credibility because Wells disliked Schumpert, and that in totem, the State's witnesses lacked such credibility that evidence of prior calculation and design and identity must fail.
 {¶ 44} Despite each witness potentially having his or her own credibility issues, there is insufficient evidence that the jury clearly lost its way and created *Page 18 
a manifest miscarriage of justice. Here, the evidence does not weigh heavily against the conviction.
 {¶ 45} First, there still exists direct evidence of prior calculation and design, namely, Schumpert's constant phone calls throughout the day to try to find Johnson and Schumpert's cellular phone records, placing him near the scene of the crime.
 {¶ 46} Thus, in reviewing the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of witnesses, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that Schumpert's conviction must be reversed and a new trial ordered.
 {¶ 47} Schumpert's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 19 
 FRANK D. CELEBREZZE, JR., A.J., and PATRICIA A. BLACKMON, J., CONCUR. *Page 1