JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Eroge Thomas appeals from his conviction after a jury trial for aggravated murder with a repeat murder specification.
 {¶ 2} In his seven assignments of error, Thomas claims that he was denied his right to counsel at his arraignment, that the prosecution violated his right to equal protection of the law in its exercise of its peremptory challenges during jury selection, that the trial court improperly denied his post-verdict motion for a new trial, that his conviction was based upon insufficient evidence, that the trial court should have permitted him to recall one of the state's witnesses, that he was absent during a "critical phase" of trial, and that his trial counsel provided ineffective assistance by permitting the foregoing "errors" to occur. He further asserts that all of the foregoing "cumulative errors" compromised his right to a fair trial.
 {¶ 3} This court has thoroughly reviewed the record with Thomas' assignments of error in mind, and concludes that none has merit. Consequently, his conviction is affirmed.
 {¶ 4} Thomas' conviction results from an incident that occurred at his workplace on the evening of July 23, 2004. Thomas had worked at the Marriot Hotel in Cleveland, Ohio as a kitchen utility person for approximately a year by that time.
 {¶ 5} Thomas' employment duties were general in nature. On a daily basis, he and the other two coworkers assigned to the second shift would clean the floors and wall areas of the kitchen, its offices, coolers, and hallway areas, wash large cooking pots, trays and preparation tables, operate the dishwasher, transfer food supplies, and empty trash barrels. Additionally, utility workers were required to sweep the loading dock where the food supplies arrived.
 {¶ 6} Thomas had two immediate supervisors, viz., assistant chefs Amy Brin and Jameatra Mitchell. Since Brin also was a kitchen manager, she generally directed the duty assignments. One of Brin's colleagues, sous chef Daniel Scully, described her as "fair, but tough;" he indicated she held her employees to high standards of performance. Thomas became more friendly with Mitchell. As a result, Mitchell often permitted Thomas to work overtime hours.
 {¶ 7} In the months before the incident, Thomas began to complain to Mitchell and his coworkers concerning some aspects of his employment conditions. First, Thomas believed the members of the first shift were leaving work for the second shift to do. Second, he considered Brin to be not only disrespectful of him, but also to be "picking on" him. Kitchen staff noticed that Thomas began arriving at the hotel early in order to survey the work assignments posted on the bulletin board.
 {¶ 8} On the day of the incident, Brin posted a work assignment for the utility team that stated the following:
 {¶ 9} "This needs to get done today, no exceptions or excuses!!! Michael C[ourtney]., Michael G., and Thomas, all of you need to go down to the loading dock and clean it. Sheet trays need to be cleaned. Trash cans, sweep them up, all coolers, hallway, freight elevator, chefs' office. This is to be done on a daily basis. During down time, detail the kitchen, scrub walls, shelves, tables, legs, scrub walls on the coolers, clean racks. Follow your schedules, no overtime."
 {¶ 10} Thomas, as was his habit, arrived prior to the beginning of his shift; he saw the posted work assignment. When Mitchell arrived for work at 4:00 p.m., she observed Thomas and Brin near the chefs' office, engaged in what appeared to be an argument.
 {¶ 11} Courtney arrived at work shortly before 6:00 p.m. Thomas, indicating he took some umbrage at its message, personally accompanied Courtney to look at the work assignment. Thomas complained to Courtney that the first shift people never seemed to get letters that gave them extra work, and that Brin had intimated the second shift was "ignorant."
 {¶ 12} As the men then began their duties, first taking the trash cans to the loading dock for cleaning, Courtney noticed that Thomas was approached by the hotel's general manager, who inquired about his mood. Thomas reassured the manager; however, when the three second shift workers were alone, Thomas seemed unable to let go of his anger about the work assignment.
 {¶ 13} By 7:00 p.m., he was asking if one of them knew where Brin lived. By nearly 8:00 p.m., he could no longer focus on his work. He told Courtney that he was returning to the kitchen. Courtney's offer to accompany him was rebuffed. Thomas stated, "You don't need to go * * * up there, because it ain't going to be nothing nice." Thomas' tone caused Courtney to remain at the dock area.
 {¶ 14} Thomas entered the busy kitchen and approached Brin where she was working at the line table. He asked to speak with her personally. When she indicated she was too busy, he withdrew momentarily, but returned and told her he had to leave work early for a "family emergency." Brin attempted to put him off to Mitchell; nevertheless, Thomas insisted Brin should handle the matter.
 {¶ 15} Brin acquiesced, but wanted Mitchell to accompany them to the chefs' office. Once there, she sat and prepared the notation to grant Thomas' request. Thomas seemed unsatisfied; he stepped up to the desk and asked Brin if she had called him ignorant. Brin responded, "No, I said you had an ignorant mentality."
 {¶ 16} At that, Thomas struck her in the temple. Brin initially was stunned by the action, then leapt up and ran from the office. Mitchell's attempt to restrain Thomas from taking further aggressive action against Brin was unsuccessful; he shook her off and went in pursuit.
 {¶ 17} Other kitchen workers watched as Thomas cornered Brin, grabbed plates from the "prep table," and threw them, one at a time, at her. When his hands were empty, he then took up from the same prep table one of the large kitchen knives that lay there. Although she tried to escape, Thomas began stabbing her repeatedly; as he struck, he demanded an apology from her.
 {¶ 18} After receiving eleven stab wounds, mostly to her torso, Brin finally collapsed onto the floor. Thomas left the hotel in the confusion that followed the incident, but he soon was apprehended a few blocks away. One of his coworkers identified him as the man who had committed the assault.
 {¶ 19} Brin's subsequent autopsy demonstrated that several of the stab wounds were nearly seven inches deep. Thomas was indicted on one count of aggravated murder in violation of R.C.2903.01(A), with a repeat murder specification for his earlier conviction for that offense.
 {¶ 20} Thomas entered a plea of not guilty at his arraignment and received the assistance of two assigned counsel who were experienced in defending clients accused of capital offenses. Counsel subsequently requested of the trial court to appoint an expert to conduct an independent psychological examination of Thomas in order to determine his sanity at the time of the act and his competency to stand trial. The court granted the request.
 {¶ 21} Thomas' case eventually proceeded to a jury trial. After hearing the evidence, the jury found him guilty of aggravated murder. Before the mitigation phase could proceed, however, the trial court received a suggestion that Thomas was incompetent to aid in his defense. The trial court granted original defense counsels' request to withdraw from the case, appointed new counsel for Thomas, and suspended the proceedings until he was restored to competence.
 {¶ 22} Upon the resumption of Thomas' trial, the court found him guilty of the specification contained in the indictment. The court denied Thomas' motion for a new trial, and the mitigation phase began.
 {¶ 23} The jury ultimately determined the aggravating circumstance did not outweigh the mitigating factors; therefore, it recommended a sentence of life without the possibility of parole. The trial court duly sentenced Thomas as recommended by the jury.
 {¶ 24} Thomas' timely appeal of his conviction presents seven assignments of error for review. His first states as follows:
 {¶ 25} "I. Prejudice is presumed when the trial court denies counsel at the arraignment, a critical stage of the proceedings, in violation of State v. Martin, 103 Ohio St.3d 385,2004 Ohio 5471, Syl. 2, Ohio Crim.R. 10 and 44, Bell v. Cone,535 U.S. 685 (2002) and Mickens v. Taylor, 535 U.S. 162 (2002)."
 {¶ 26} Thomas argues that his arraignment should have been postponed because he told the court he was indigent; he asserts the court's failure to appoint counsel to represent him during that proceeding violated both his constitutional rights and his rights under the criminal rules. This court disagrees.
 {¶ 27} In State v. Abdelshahid, Cuyahoga App. No. 84579, 84580, 2005-Ohio-3001, this court reasoned at ¶¶ 27-28 that because a defendant in Ohio cannot "forever" waive "certain rights and defenses" at his arraignment, in order to prevail in the foregoing argument, he must demonstrate that he was prejudiced by the absence of counsel at the arraignment. In this case, as in State v. Abdelshahid, Thomas made no incriminating statements and simply entered a plea of not guilty.
 {¶ 28} Under these circumstances, he cannot demonstrate any prejudice. Id. at ¶ 29. Consequently, his first assignment of error is overruled.
 {¶ 29} Thomas' second assignment of error states:
 {¶ 30} "II. The state's use of peremptory challenge exercised on the exclusion of women from the jury violated the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, J.E.B. v. Alabama, 511 U.S. 127 (1994) and the Ohio Constitution. Defense counsel's failure to object was constitutionally defective under Strickland v. Washington,466 U.S. 668 (1984)."
 {¶ 31} Without providing this court with the numbers of men and women who composed the original venire, Thomas argues that the record reflects that the state excused from the jury only women without proper reason. State v. Gowdy, 88 Ohio St.3d 387,2000-Ohio-355, footnote 2. He further argues that defense counsel failed to raise an objection to the state's actions. Both arguments, however, are belied by the record.
 {¶ 32} The transcript of the voir dire demonstrates the prosecutor became aware during the proceeding that certain jurors indicated a reluctance when questioned about their view of the death penalty. These jurors, for the most part, were women. Although, for some, their answers apparently satisfied the trial court, the prosecutor was less sure.
 {¶ 33} After the prosecutor had excused prospective Juror 16, a female, defense counsel objected, asserting a pattern of excluding women was beginning to take shape. The prosecutor explained, "Your Honor, quite frankly, my biggest concern is in fact this is a death penalty case; I keep going back to her answer on that. There were a number of jurors [who] expressed a point of view that they believe God has the power to take and give life here. And, quite frankly, that concerns me, whether its her or anybody else on this panel. I just don't think in my professional opinion that * * * she really is going to measure up to the task when and if we get to that point in time."
 {¶ 34} The trial court, as was its prerogative, accepted the prosecutor's explanation. State v. Gowdy, supra, at 394-395. In addition, the court reminded defense counsel that they were "beginning to demonstrate a pattern as to white males being excluded from the panel," and warned them to "be careful." Thomas ultimately was tried by a jury which consisted of equal numbers of women and men.
 {¶ 35} Since the record thus reflects compliance with constitutional requirements, Thomas' argument is rejected.
 {¶ 36} Accordingly, his second assignment of error also is overruled.
 {¶ 37} Thomas' third assignment of error states:
 {¶ 38} "III. The trial court erred in denying appellant's motion for a mistrial/new trial when it was discovered that original trial counsel did not conduct an adequate investigation of the appellant's emotional and mental state at the time of the offense, failed to investigate the cause of appellant's seizure's (sic) as a youth and failed to discover the appellant's well-documented history of psychosis. Trial counsel's conduct violated the Sixth and Fourteenth Amendments of the of the U.S. Constitution, Wiggins v. Smith, 123 S.Ct. 2526 (2003), and the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty [Cases] 2003."
 {¶ 39} In this lengthy assignment of error, Thomas argues the trial court improperly denied his post-verdict motion for a "mistrial/new trial." He bases this argument on assertions that his original defense attorneys committed inexcusable "omissions," one of which was a failure to raise the defense of "diminished capacity," a defense which is not recognized in Ohio. See, Statev. Wilcox (1982), 70 Ohio St.2d 182, 194; State v. Huertas
(1990), 51 Ohio St.3d 22, 27. Since these assertions completely lack merit, his argument is rejected.
 {¶ 40} A motion for a new trial is a matter left within the sound discretion of the trial court, and this court may not reverse the trial court's decision absent a finding that the trial court abused its discretion. State v. Schiebel (1990),55 Ohio St.3d 71; Toledo v. Stuart (1983), 11 Ohio App.3d 292. Motions for a new trial are not granted lightly. Id.
 {¶ 41} No abuse of discretion occurred in this case. The record reflects that during the discovery process defense counsel engaged the services of a psychological expert who examined Thomas on several occasions and who determined Thomas was both sane at the time of the act and competent to stand trial.
 {¶ 42} The trial court, moreover, agreed with his assessment. When the question of Thomas' competence was raised following the jury's guilty verdict, the court stated, "at all times [defendant's] demeanor was appropriate * * * prior to and during the course of the trial." Recounting the several in-court pretrial hearings that took place, the court indicated Thomas was "appropriate and responsive" each time. Furthermore, Thomas sent a letter to the court in which he was "cogent" and "articulate." The court concluded that Thomas exhibited no behavior during the guilt phase that would cause a suggestion he "was in any way impaired from proceeding throughout the course of the trial."
 {¶ 43} Based upon the foregoing, the trial court acted within its discretion to deny Thomas' post-verdict motion for a new trial. State v. Hedgecoth, Hamilton App. No. C-020480, 2003-Ohio-3385; Crim.R. 33(E). Thomas' third assignment of error, accordingly, is overruled.
 {¶ 44} Thomas' fourth assignment of error states:
 {¶ 45} "IV. There was insufficient evidence of `prior calculation and design' to support a conviction for Aggravated Murder and the conviction was against the manifest weight of the evidence."
 {¶ 46} Thomas argues the state failed to sustain its burden to prove he committed the murder of Brin with "prior calculation and design;" therefore, his conviction for aggravated murder cannot stand.
 {¶ 47} In considering a claim of insufficient evidence, this court is required to view the evidence adduced at trial, both direct and circumstantial, in a light most favorable to the prosecution to determine if a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421; 1997-Ohio-372; State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 48} The test to establish the element of "prior calculation and design" is whether the evidence "reveals the presence of sufficient time and opportunity for the planning of an act * * *, and the circumstances * * * show a scheme designed to implement the calculated decision to kill * * *." State v.Cotton (1978), 56 Ohio St.2d 8, paragraph 3 of the syllabus; see also, State v. Moreland (1990), 50 Ohio St.3d 58; State v.Taylor, 78 Ohio St.3d 15, 1997-Ohio-243, citing State v.Jenkins (1976), 48 Ohio App.2d 99.
 {¶ 49} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 50} Viewing the evidence adduced at Thomas' trial in a light most favorable to the state leads to the conclusion the murder of Brin was a planned act.
 {¶ 51} The evidence demonstrated Thomas' resentment of Brin was long-standing, and was fueled by her attitude of "disrespect." He arrived at work early each day to satisfy himself she had not changed; indeed, her posting of the most recent assignment notice seemed the last straw. Thomas was seen arguing with her before his shift began, held onto his anger for hours, and finally decided to confront her, warning to his colleague Courtney to remain behind because the confrontation would be "nothing nice."
 {¶ 52} When he returned to the kitchen, Thomas' first attempt to get Brin alone was rebuffed, so he invented a "family emergency" which required her personal attention. Even though his invention did not succeed in getting her alone, and even though she was acceding to his request to leave work early, his anger at her remained unappeased.
 {¶ 53} Thomas struck Brin unexpectedly in the face. Rather than obtaining satisfaction, he instead broke free of Mitchell's restraint and escalated his attack. He positioned himself so that when he ran out of china to throw at Brin, he could appropriate a carving knife, approach her, and, ultimately, forcefully stab her repeatedly in the area of her body where he could inflict not superficial but fatal injuries.
 {¶ 54} The warning given to Courtney by Thomas, the length between the time Thomas first approached Brin and the time he managed with a falsehood to get her into her office, his failure after his initial attack to permit her to escape, and the deliberate nature of the stabbing, all indicate the necessary "studied analysis" of a plan and method of attack. State v.Taylor, supra, cf., State v. Jenkins, supra.
 {¶ 55} Therefore, Thomas' conviction for aggravated murder in violation of R.C. 2903.01(A) was sustained by both sufficient evidence and the weight of the evidence. State v. Taylor,
supra; State v. Jenkins (Feb. 10, 2000), Cuyahoga App. No. 75343.
 {¶ 56} His fourth assignment of error, accordingly, also is overruled.
 {¶ 57} Thomas' fifth assignment of error states:
 {¶ 58} "V. Counsel was ineffective under the federal constitution when he (sic) failed to cross-examine Michael Courtney concerning his prior felony conviction and the trial court abused her (sic) discretion in denying the appellant the opportunity to recall Michael Courtney."
 {¶ 59} This assignment of error combines two completely separate arguments in derogation of the requirements of App.R. 16(A)(7) and App.R. 12(A)(1)(b). Under such circumstances, this court has no duty to address it. State v. Gibson (Nov. 21, 1991), Cuyahoga App. No. 59541; see also, Cleveland v. Austin
(1974), 55 Ohio App.2d 215 at 230.
 {¶ 60} Thomas' fifth assignment of error is overruled.
 {¶ 61} His sixth assignment of error states:
 {¶ 62} "VI. The defendant's absence during a critical stage of the proceedings violated the Fourteenth Amendment of the U.S. Constitution."
 {¶ 63} Thomas argues in this assignment of error that the trial court erred by failing to command his presence when, during guilt-phase deliberation, the jury submitted to it a written question.
 {¶ 64} The record demonstrates the trial court in this case followed the same procedure deemed appropriate by the Ohio Supreme Court in State v. Campbell, 90 Ohio St.3d 320 at 346, 2000-Ohio-183. The trial court discussed the question on the record with counsel, counsel waived Thomas' presence at this discussion, and the trial court thereafter submitted its answer in a note to the jury. Therefore, Thomas was not absent at a "critical stage" of the proceeding.
 {¶ 65} Accordingly, Thomas' sixth assignment of error is overruled.
 {¶ 66} Thomas' seventh assignment of error states:
 {¶ 67} "VII. The cumulative errors deprived the appellant of due process under the Fourteenth Amendment of the federal constitution."
 {¶ 68} In view of this court's disposition of Thomas' previous assignments of error, this assignment of error lacks merit and, therefore, is overruled.
 {¶ 69} Thomas' conviction is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J. and Blackmon, J. concur.