O’Donnell, J.,
dissenting.
{¶ 29} Respectfully, I dissent.
Sufficiency of the Evidence
{¶ 30} The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court, to determine whether, after construing all reasonable inferences in favor of the state, any reasonable trier of fact could find that the state presented evidence to prove each of the material elements of the offense beyond a reasonable doubt. State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; State v. Martin, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph two of the syllabus.
{¶ 31} As we explained in Jenks, “The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational *417 trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.” Jenks at paragraph two of the syllabus, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, “on review for evidentiary sufficiency we do not second-guess the jury’s credibility determinations; rather, we ask whether, ‘if believed, [the evidence] would convince the average mind of the defendant’s guilt beyond a reasonable doubt.’ ” (Emphasis and brackets sic.) State v. Murphy, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), quoting Jenks at paragraph two of the syllabus.
Manifest Weight
{¶ 32} A sufficiency analysis is different from that undertaken in determining whether a conviction is against the manifest weight of the evidence. Thompkins at paragraph two of the syllabus. In considering a manifest-weight claim, the appellate court “review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.” Martin, 20 Ohio App.3d at 175, 485 N.E.2d 717.
{¶ 33} Thus, “[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ‘ “thirteenth juror” ’ and disagrees with the factfinder’s resolution of the conflicting testimony.” Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting Tibbs v. Florida, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).
{¶ 34} Notably, the state’s brief cites five recent cases in which the Eighth District Court of Appeals has misapplied these standards in holding that the state presented insufficient evidence of prior calculation and design: State v. Hill, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, 2013 WL 658172 (the appellate court rejected an inference of prior calculation and design when the accused and the victim argued about money over an extended period, the accused fired two shots, and then he fired a third shot while the victim was down on his knees); State v. Woods, 8th Dist. Cuyahoga No. 99630, 2014-Ohio-1722, 2014 WL 1669103 (the appellate court rejected an inference of prior calculation and design when the accused lured the victim to his room and strangled her); State v. Shabazz, 8th Dist. Cuyahoga No. 100021, 2014-Ohio-1828, 2014 WL 1775686 (the appellate court rejected the inference of prior calculation and design to support aggravated murder when Shabazz and his co-defendant were seen talking before an attack on Ivor Anderson and Antwon Shannon); State v. Hicks, 8th Dist. Cuyahoga No. 102206, 2015-Ohio-4978, 2015 WL 7777272 (the appellate court rejected an inference that the accused planned to kill his estranged wife while on a date night after arguing with her earlier in the evening); State v. Durham, 2016-Ohio-691, *418 60 N.E.3d 552 (8th Dist.) (the appellate court rejected the inference that the accused had lured the victim behind a building before shoo|ing him in the head).
{¶ 35} The consequences of misapplying the standard of review are significant. When a reviewing court reverses a conviction as against the manifest weight of the evidence, a new trial is permitted. Tibbs at 45; C.K. v. State, 145 Ohio St.3d 322, 2015-Ohio-3421, 49 N.E.3d 1218, ¶ 14. However, when an appellate court reverses a conviction on the basis that it is supported by insufficient evidence, the Double Jeopardy Clause bars retrial. Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. Brewer, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 15.
{¶ 36} In this case, the Eighth District was required to view the evidence in the light most favorable to the state and to draw all reasonable inferences in the state’s favor when it reviewed Walker’s conviction for sufficient evidence of prior calculation and design. It failed in that duty.
Prior Calculation and Design
(¶ 37} Prior to 1974, Ohio law “described ‘deliberate and premeditated malice’ as constituting first degree murder. * * * [A] killing could be premeditated even though conceived and executed on the spur of the moment. The only requirement was that the malicious purpose be formed before the homicidal act, however short in time.” State v. Cotton, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978).
{¶ 38} Effective January 1, 1974, however, the General Assembly amended R.C. 2903.01(A) to define the offense of aggravated murder, providing that “[n]o person shall purposely, and with prior calculation and design, cause the death of another.” Am.Sub.H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1900. The term “prior calculation and design” is not defined by statute, but we have stated:
The apparent intention of the General Assembly in employing this phrase was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill. Thus, instantaneous deliberation is not sufficient to constitute “prior calculation and design.”
Cotton at 11.
{¶ 39} As we more recently explained in State v. Maxwell, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930:
*419 No bright-line test exists that “emphatically distinguishes between the presence or absence of ‘prior calculation and design.’ Instead, each case turns on the particular facts and evidence presented at trial.” State v. Taylor, 78 Ohio St.3d 15, 20, 676 N.E.2d 82 (1997). However, when the evidence presented at trial “reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.” State v. Cotton, 56 Ohio St.2d 8, 381 N.E.2d 190 (1978), paragraph three of the syllabus.
Maxwell at ¶ 148.
{¶ 40} In State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, we reiterated three “pertinent” considerations in determining whether prior calculation and design existed: “ ‘(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or “an almost instantaneous eruption of events? ” ’ ” Id. at ¶ 56, quoting Taylor, 78 Ohio St.3d at 19, 676 N.E.2d 82, quoting State v. Jenkins, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976). However “pertinent” they may be, we have never held that these are the exclusive factors to be applied in determining whether the accused acted with prior calculation and design.
{¶41} Rather, we have recognized that “prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes,” State v. Coley, 93 Ohio St.3d 253, 264, 754 N.E.2d 1129 (2001), as long as the killer’s actions “went beyond a momentary impulse and show that he was determined to complete a specific course of action,” State v. Conway, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 46.
{¶ 42} In State v. Palmer, 80 Ohio St.3d 543, 567-568, 687 N.E.2d 685 (1997), we explained that sufficient evidence of prior calculation and design existed when, after being involved in a minor accident with a pickup truck, Donald L. Palmer Jr. exited the vehicle with a loaded revolver that was cocked and ready to fire and shot the truck’s driver, Charles Sponhaltz, twice in the head. Id. at 543. Although the killing took only moments, we concluded that “[t]he evidence, when viewed in a light most favorable to the state, was more than sufficient to show that [Palmer] had adopted a plan to kill Sponhaltz prior to exiting [the] vehicle and that, with a level of precision, [Palmer] followed through on his calculated decision to kill.” Id. at 569.
*420 {¶ 43} Similarly, in Taylor, we explained that only a short time is needed to form prior calculation and design. In that case, Michael N. Taylor objected when Marion Alexander asked Taylor’s girlfriend to play a song for him on the jukebox. 78 Ohio St.3d at 16, 676 N.E.2d 82. Taylor told his girlfriend they were leaving and then walked up to Alexander and shot him multiple times, killing him. Id. at 16-17. We noted there that from the accused’s bringing a firearm to a bar that he knew the victim frequented, the jury could infer that the accused intended to use it, id. at 22, and we concluded that “[ejven though most of the evidence indicates that the time between the jukebox incident and the shooting was only two or three minutes, there was more than sufficient evidence for the jury to reasonably have found that [Taylor], with prior calculation and design, decided to shoot Alexander in that space of time,” id.
The State Presented Sufficient Evidence of Prior Calculation and Design
{¶ 44} Viewing the evidence in a light most favorable to the state, it is manifest that sufficient evidence of prior calculation and design exists to support Walker’s conviction. Anderson testified that after he spoke to Steel, he suspected he might be attacked by Steel and his group, and the camera footage shows the group gesturing and looking toward him over an extended period of time. The video also reveals their preparations for the attack. Steel concealed an empty champagne bottle, Shabazz removed his glasses, and an unidentified accomplice zipped up his coat. Johnson also concealed a champagne bottle behind his forearm and walked across the dance floor, putting Anderson between himself and Steel. Steel then pointed toward Anderson as he danced, and the unidentified member of Steel’s group stood close by.
{¶ 45} Shabazz and Walker were watching Shannon when the fight started. Walker specifically targeted Shannon—circling the fight to reach him, punching him, apd attempting to hit him with a champagne bottle. Based on this evidence, the jury could reasonably infer that the attack on Anderson and Shannon was preplanned and coordinated and it could also infer from the use of champagne bottles in the attack that there was an intent to cause serious injury or death.
{¶ 46} Most importantly, the video reveals that Walker reached for his waistband and withdrew from the fight for approximately 20 seconds. From this evidence, the jury could reasonably infer that he was holding a firearm for that entire time, which gave him sufficient time and opportunity to reflect on whether to use it, and the jury could also reasonably conclude that within that 20 seconds Walker conceived a plan to kill either Shannon or Anderson, strategically placing himself behind the pillar and waiting for a clear shot. He then shot Shannon in the back at close range, and when the shot sounded, Shabazz showed no noticeable reaction, from which the jury could reasonably infer that Shabazz was not surprised by the shooting. And, after Walker emerged from behind the *421 pillar, Shabazz is seen on the video tapping him on the chest in what the jury could reasonably view as a celebratory gesture.
Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder and Anna M. Faraglia, Assistant Prosecuting Attorneys, for appellant.
Leif B. Christman; Russell S. Bensing; and Dinn, Hochman, & Potter, L.L.C., and Justin Withrow, for appellee.
Robert L. Tobik, Cuyahoga County Public Defender, and Erika B. Cunliffe, Cullen Sweeney, and Jeffrey Gamso, Assistant Public Defenders, urging affir-mance for amici curiae Cuyahoga County Public Defender and Cuyahoga Criminal Defense Lawyers Association.
{¶ 47} Walker does not dispute that the evidence established that he murdered Shannon. And, based upon the evidence presented at trial, the jury reasonably concluded that he acted with prior calculation and design.
Conclusion
{¶ 48} In this case, the court of appeals failed to view the evidence in a light most favorable to the state and further failed to draw all reasonable inferences in favor of the state; it therefore substituted its judgment for that of the jury in ruling that the state failed to present sufficient evidence that Walker murdered Shannon with prior calculation and design. The jury reasonably concluded that by participating in a coordinated and preplanned attack against Shannon and Anderson and by drawing a firearm, withdrawing from the attack, and waiting behind a pillar for 20 seconds before shooting Shannon in the back, Walker committed aggravated murder with prior calculation and design.
{¶ 49} The pattern exhibited by the appellate court in failing to draw all reasonable inferences in favor of the state when considering a sufficiency challenge demonstrates a lack of understanding of the applicable legal standards and in my view results in a miscarriage of justice.
{¶ 50} For these reasons, I would reverse the judgment of the court of appeals, reinstate the judgment of the trial court, and instruct the appellate court to adhere to the proper sufficiency analysis in all future cases.
Kennedy and French, JJ., concur in the foregoing opinion.