[Cite as *State v. Stiltner*, 2021-Ohio-959.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :        Case No. 19CA3882

                                 :

v.                                      :        DECISION AND JUDGMENT
                                        :        ENTRY
NATHAN STILTNER,                        :

    Defendant-Appellant.         :        **RELEASED: 03/22/2021**

_____

APPEARANCES:

Rachel E. Daehler, Portsmouth, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, for Appellee.
_____

Wilkin, J.

{¶1} This is an appeal from a Scioto County Court of Common Pleas judgment entry convicting Appellant, Nathan Stiltner, of aggravated murder, murder, and felonious assault, all with firearm specifications for which he was sentenced to life in prison without the possibility of parole for 28 years. On appeal, Appellant asserts nine assignments of error. Based upon our review of the parties' arguments, applicable law, and the record, we overrule all of Appellant's assignments of error, except for assignment number seven regarding his allegation that the trial court failed to inform him of post-release control. Therefore, we affirm the trial court's judgment of conviction, but remand this matter to the trial court to hold a hearing for the limited purpose of notifying Appellant of post-release control consistent with R.C. 2929.191.

BACKGROUND

{¶2} On August 4, 2018, Douglas A. Thackston ("Thackston") was shot to death. On August 5, 2018, police arrested Appellant, Nathan Stiltner, for the murder of Thackston. On August 23, 2018, the state charged Appellant with aggravated murder with a firearm specification in violation of R.C. 2903.01(A), 2903.01(F), 2929.02(A), and R.C. 2941.145(A); murder with a firearm specification in violation R.C. 2903.11(A)(2), R.C. 2903.02(B) & (D), R.C. 2902.02(B), and R.C. 2941.145(A); felonious assault with a firearm specification in violation of R.C. 2903.11(A)(2)(a) & (D)(1)(a), and R.C. 2941.145(A); and having a weapon while under a disability in violation of R.C. 2923.13(A)(4) and R.C. 2923.13(B).

{¶3} On August 28, 2018, Appellant filed his first motion for discovery. On September 20, 2018, the state filed a motion for discovery, as well as a response to Appellant's motion for discovery, including a witness list that included: Jean Conley, Chuckie Blevins, David Kazee, Fred Williams, Jerry Moss, Portsmouth police detectives, and others. On September 24, 2018, the trial court granted Appellant's motion and authorized funds for Appellant to hire an investigator. Trial was set for October 29, 2018. On October 16, 2018, the Appellant filed a motion to continue his trial because his counsel needed more time to prepare, which the trial court granted, and rescheduled the trial for December 17, 2018.

{¶4} On October 31, 2018, Appellant's counsel filed a motion to withdraw, which the trial court granted on November 5, 2018. On that same day, the trial court appointed new counsel to represent Appellant.

{¶5} On the week of December 10, 2018, the state filed five supplemental discovery responses, disclosing to Appellant: (1) a Bureau of Criminal Investigation ("BCI") DNA lab report, (2) witness, BCI employee, Logan Schepeler, (3) witness, Bridget Stump, (4) a BCI gun report, (5) witness, BCI employee, Heather Williams (6) witness, Steven Arthur, (7) CD/DVD interview of Richard Scott, (8) witness, Pamela Keibler, and (9) witness, Donald Stiltner.  On December 14, 2018, Appellant filed a motion to dismiss or exclude the evidence included in these supplemental responses, arguing that "the evidence in question will demonstrate the detective's involved in the case knew of the evidence in August 2018, foreknowledge such evidence would be used would have benefitted, and late disclosure prejudices the defendant."  He also filed a motion to continue the trial based on the newly disclosed evidence.  After a pretrial hearing, which addressed Appellant's motion to dismiss/exclude the state's supplemental discovery responses, the judge, in part, stated "I don't know that I've got any of the elements [justifying dismissal of the evidence] – first of all, I don't think we've got any willfulness [on behalf of the state in delaying discovery]."  Consequently, the judge indicated to the parties that he was "not going to dismiss the case," but would exclude Stevie Arthur from testifying if the trial went forward on December 17th.

{¶6} On December 17, 2018, the state filed additional supplements to discovery, including CD/DVD of statements of Pamela Keibler, Bridget Stamp, and Donald Stiltner.  On December 27, 2018, the trial court issued an entry

granting Appellant's motion to continue his trial, and rescheduled the trial for March 4, 2019.

{¶7} On February 4, 2019, the Appellant filed a motion to suppress evidence.  On February 13, 2019, Appellant filed a motion for an evaluation of his competency, as well as a second motion to suppress additional evidence.

{¶8} On February 19, 2019, the trial court granted Appellant's motion for a competency exam.  On February 25, 2019, the trial court issued an order continuing the March 4th trial date pending Appellant's competency evaluation.

{¶9} On March 28, 2019, the trial court rescheduled the trial for May 20, 2019.

{¶10} On April 2, 2019, Appellant filed a motion to continue the trial from May 20th to May 25th, which the trial court overruled.  On April 10, 2019, the trial court held a competency hearing and found Appellant competent to stand trial.  On May 7, 2019, the trial court held a suppression hearing.

{¶11} On May 20, 2019, the first day of trial, Appellant filed a motion to dismiss based on speedy trial violations, which was denied by the trial court on the same day.  On May 23, 2019, Appellant filed a motion for a proposed jury instruction on self defense, which was denied on the same day.  Additionally, the state dismissed count four of the indictment, having a weapon while under a disability.

{¶12} At trial, the state presented 16 witnesses and evidence that generally indicated the following: Appellant threatened Thackston because of a debt owed, including threats made through Facebook Messenger, with Appellant

stating: "Bruh if u don't come pay me I swear to God imam find u and I will personally shoot up ur van wit u in it and yo ass will be homeless and walkin." Appellant was seen the night before the murder with a metal detector to get his "tool" and later returned showing his tool to David Kazee, which was a gun. Appellant and Thackston argued the day of the murder, and, at the time, Appellant had a gun in the waistband of his pants. Later that same day, Appellant entered a nearby apartment owned by Jean Conley, which was also occupied by Chuckie Blevins, Fred Williams, Stevie Williams, and Thackston. After Appellant entered the apartment, he sat for several minutes not speaking to anyone, and when asked by Blevins to leave if he had a gun, Appellant began walking toward the front door.  The allegations and testimony differed as to what occurred next. Appellant's counsel argued that Appellant was grabbed by four persons and beaten, and then he shot Thackston in self-defense.  Blevins testified that the Appellant was grabbed from behind by Thackston, and then Appellant pulled his gun and shot Thackston.  But Conley testified that Blevins "did not grab [Appellant]," and she "didn't see [Thackston] grab [Appellant] either," although later in her testimony she agreed she did not see much immediately prior to the shooting.  After Appellant shot Thackston, he fled the scene.

{¶13} The jury found Appellant guilty on the remaining counts of aggravated murder, murder, felonious assault, as well as the accompanying firearm specifications.  The trial court merged the counts with the state electing to sentence Appellant for the aggravated murder charge and the firearm specification.  The trial court imposed a prison sentence of 25 years to life for

aggravated murder, and three years for the firearm specification to be served

consecutively for an aggregate sentence of life in prison without the possibility of

parole for 28 years.  It is from this conviction that Appellant appeals, asserting

nine assignments of error.

I. THE TRIAL COURT ERRED WHEN IT FAILED TO EXCLUDE EVIDENCE
DISCLOSED BY THE PROSECUTION DAYS BEFORE TRIAL IN VIOLATION
OF CRIMINAL RULE 16, THEREBY FORCING APPELLANT TO WAIVE HIS
SPEEDY TRIAL RIGHTS

II. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO
DISMISS FOR SPEEDY TRIAL VIOLATIONS

III. THE TRIAL COURT ERRED WHEN IT EXCUSED JUROR #12 PRIOR TO
THE COMPLETION OF TRIAL WITHOUT FIRST OFFERING REASONABLE
ACCOMMODATION OR OPPORTUNITY TO SEEK MEDICAL INTERVENTION

IV. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION
FOR ACQUITTAL AS TO COUNT ONE OF THE INDICTMENT, AGGRAVATED
MURDER, AS THE PROSECUTION DID NOT PROVE BEYOND A
REASONABLE DOUBT PRIOR CALCULATION AND DESIGN

V. THE TRIAL COURT ERRED WHEN IT FAILED TO APPLY THE NEW SELF-
DEFENSE LAW, WHICH WOULD HAVE REQUIRED THE PROSECUTION TO
PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT DID NOT
ACT IN SELF-DEFENSE

VI. THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY ON
CONSCIOUSNESS OF GUILT, AS SUFFICENCY OF EVIDENCE WAS NOT
PRESENTED AT TRIAL TO WARRANT SUCH INSTRUCTION

VII. THE TRIAL COURT ERRED WHEN IT FAILED TO ADVISE APPELLANT
THAT HE WAS SUBJECT TO A PERIOD OF POST-RELEASE CONTROL,
AND, AS A RESULT, THE SENTENCE IS VOID AND APPELLANT IS
ENTITLED TO A NEW SENTENCING HEARING

VIII. APPELLANT'S CONVICTIONS FOR AGGRAVTED MURDER, MURDER,
AND FELONIOUS ASSAULT WERE AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE, AS APPELLANT WAS ACTING IN SELF DEFENSE AT THE
TIME OF THE SHOOTING

IX. CUMULATIVE ERRORS DURING APPELLANT'S TRIAL DEPRIVED HIM OF
A FAIR TRIAL AND REQUIRE A REVERSAL OF HIS CONVICTIONS

ASSIGNMENT OF ERROR I

{¶14} In his first assignment of error, Appellant asserts that the trial court erred when it failed to exclude evidence disclosed by the prosecution days before trial in violation of Criminal Rule 16(L), thereby forcing Appellant to waive his speedy trial rights.

{¶15} Appellant argued that the state supplemented its witness list adding Bridget Stump, Richard Scott, Pamela Keibler, and Donald Stiltner the week prior to trial. Appellant argues that the trial court abused its discretion in failing to exclude these witnesses from testifying at trial.

{¶16} Appellant asserts that the BCI report naming Bridget Stump as having her DNA on the murder weapon was completed on October 1, 2018. Therefore, Appellant argues that the state's failure to disclose Stump as a witness until December 10, 2018 was willful. He also asserted that if he had foreknowledge of the DNA report, he would have prepared his defense in a different manner. Finally, Appellant alleges that had he received the report earlier, he could have done his own testing to clarify the presence of Ms. Stump's DNA.

{¶17} Appellant argues that the state disclosed Richard Scott as a witness five days prior to trial. Appellant alleges that Scott's name is mentioned throughout discovery, but detectives failed to interview him until early December. Therefore, he asserts, the state acted willfully in failing to timely interview a key witness, which could have changed Appellant's strategy, thereby causing

prejudice to the Appellant by forcing him to waive his speedy trial rights to properly prepare for Scott.

{¶18} Finally, Appellant argues that the disclosure of Pamela Keibler and Donald Stiltner were the most egregious discovery violation as they were disclosed just four days prior to trial. Appellant argues, the witnesses were known to detectives since August 16th. He also argues that the state's late disclosure was willful because of its admission that it did not initially intend to call Keibler or Stiltner as witnesses because the state believed that neither would provide favorable testimony for the state.

{¶19} In response, the state denies that any of its supplemental disclosure of witnesses the week prior to trial was willful. With regard to Stump, the state alleges that it disclosed her as a witness after it received the BCI report on December 10th that indicated her DNA was on the gun. Therefore, the state argues it was BCI's fault that the state's disclosure of Stump was just a week prior to trial. Finally, the state argues that neither party called Stump as a witness so there was no prejudice to Appellant.

{¶20} With regard to the disclosure of witness, Richard Scott, the state alleges that Appellant was aware that Scott had knowledge of the shooting, and yet Appellant failed to interview Scott. The state also argues that the December disclosure of Scott as a witness did not prejudice the Appellant.

{¶21} Finally, regarding Pamela Keibler and Donald Stiltner, who are respectively Appellant's sister-in-law and brother, the state asserts that their names were on Appellant's counsel's "radar," but chose to rely upon the state to

not call them as witnesses. The state also argues that the December disclosure

of Keibler and Stiltner did not prejudice Appellant.

LAW

{¶22} "Each party shall provide to opposing counsel a written witness list *

* * of any witness it intends to call in its case-in-chief, or reasonably anticipates

calling in rebuttal or surrebuttal." Crim.R. 16(I). "Once discovery is initiated by

demand of the defendant, all parties have a continuing duty to supplement their

disclosures." Crim.R. 16(A). Crim.R. 16(L) states:

> The trial court may make orders regulating discovery not
> inconsistent with this rule. If at any time during the course of the
> proceedings it is brought to the attention of the court that a party
> has failed to comply with this rule or with an order issued
> pursuant to this rule, the court may order such party to permit the
> discovery or inspection, grant a continuance, or prohibit the party
> from introducing in evidence the material not disclosed, or it may
> make such other order as it deems just under the circumstances.

"However, prior to imposing one of the allowed orders provided in Crim.R. 16(L),

the trial court must inquire into the circumstances surrounding the violation and

should impose the least severe sanction." *State v. Lawhorn*, 4th Dist. Ross No.

11CA3223, 2012-Ohio-253, ¶ 9 citing *City of Lakewood v. Papadelis,* 32 Ohio

St.3d 1, 5, 511 N.E.2d 1138, at paragraph two of the syllabus. "The overall

objective of the criminal rules of procedure is to remove the element of

gamesmanship from such proceedings." *State v. Fouts*, 4th Dist. Washington

No. 15CA25, 2016-Ohio-1104, ¶ 46, citing *State v. Darmond,* 135 Ohio St.3d

343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 19.

{¶23} "Trial courts possess broad discretion to impose sanctions for

discovery violations, and those rulings should not be reversed on appeal absent

an abuse of that discretion." *Fouts*, at ¶ 44. "A trial court abuses its discretion

when it makes a decision that is unreasonable, unconscionable, or arbitrary."

*Darmond,* at ¶ 34. More specifically,

> where a prosecutor violates Crim.R. 16 by failing to provide the
> name of a witness, a trial court does not abuse its discretion in
> allowing the witness to testify where the record fails to disclose
> (1) a willful violation of the rule, (2) that foreknowledge would
> have benefited the accused in the preparation of his or her
> defense, or (3) that the accused was unfairly prejudiced.

*State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 15, citing
*State v. Scudder,* 71 Ohio St.3d 263, 269, 643 N.E.2d 524 (1994); *State
v. Wharton,* 4th Dist. Ross No. 09A3132, 2010-Ohio-4775, ¶ 24.

## ANALYSIS

{¶24} Initially, we note that the state did not fail to disclose any witnesses

to Appellant. Rather, the state disclosed to Appellant all witnesses at issue

pursuant to its obligation to supplement its discovery responses under Crim.R.

16(A), albeit within a week or less before trial. Further, while Appellant moved

the trial court to exclude these witnesses from testifying, he also filed a motion to

continue the trial, which, ultimately, the trial court granted.

## Bridget Stump

{¶25} Even if the BCI's report identifying Ms. Stump's DNA on the gun

was completed in October of 2018, Appellant's counsel admitted that it was not

provided to the state until December 10, 2018, the date that the state informed

Appellant of the test results and named Stump as a witness. Therefore, the

state's December 10th disclosure of Stump as a witness was not a willful act by

the state. Furthermore, Stump was never called as a witness by either party.

Apparently, the Appellant decided not to conduct his own DNA test or the results failed to assist his defense.  Consequently, there was no prejudice to Appellant.

Richard Scott

**{¶26}** Appellant alleges in his brief that "Scott was interviewed by detectives for the first time once investigators realized their case had multiple holes * * * regarding recovery of the firearm and the presence of Ms. Stump's DNA on the gun."  Accepting Appellant's argument as true, then the state recognized the need for Scott to testify only after it received the DNA report from the BCI on December 10, 2018.  Under these circumstances, the state's late disclosure of Scott as a witness was not willful, but part of its evolving strategy.

**{¶27}** At pretrial, Appellant appears to have admitted that he was aware that Scott had given a statement to the police to the effect that Scott saw Appellant with a gun at the time he was arguing with Thackston the day of the murder, and had recovered the murder weapon and gave it to Blevins, who gave it to the police.  Further, in September 2018, the state, through discovery, provided Appellant the CD/DVD disks of the police interview of Blevins.  Consequently, Appellant would have also been aware of Scott's involvement in the case to the extent that Blevins discussed Scott's involvement with the murder weapon.  Therefore, Appellant had some foreknowledge of Scott's possible testimony and the resources to conduct his own investigation of Scott, but apparently failed to do so.

Pam Keibler and Donald Stiltner

{¶28} Contrary to Appellant's interpretation, we do not find the state's reason for not naming Keibler and Stiltner as witnesses earlier was because of its "intel" indicating that Keibler and Stiltner "were firmly in the [Appellant's] corner," making the state's failure to disclose them as witnesses earlier, a willful violation of the rule. Rather it is a rational reason why the state initially decided not to call either witness, which the judge apparently agreed. Further, both witnesses are family and, similar to Scott, Appellant admits having knowledge of their statements, and had the ability to further investigate their statements, but declined to do so.

{¶29} Contrary to Appellant's assertion in his reply brief, we are not suggesting that Appellant had "responsibility to interview key witnesses in an effort to secure his own conviction." The state always has the burden of proving a criminal offense. Rather, we are merely recognizing that Appellant was aware that these persons might have information, and in fact was aware that at least one witness did have some knowledge pertinent to the murder, and he had the means to investigate those persons, but did not.

{¶30} Based on our review, we find that the trial court's decision to continue the trial, rather than exclude the supplemented discovery from the state, was not unreasonable, unconscionable, or arbitrary because (1) the state did not willfully delay naming or disclosing witnesses Bridget Stump, Richard Scott, Pamela Keibler, or Donald Stiltner; and (2) even before the state's disclosure, Appellant had some knowledge of what Scott knew regarding the murder and

Appellant had Keibler and Stiltner on his "radar" and despite having the means to

independently investigate these individuals, chose not to.  Therefore, because

the trial court did not abuse its discretion in denying Appellant's motion to

exclude the witnesses, but instead granted Appellant's motion to continue the

December 17, 2018 trial date, we overrule Appellant's first assignment of error.

### ASSIGNMENT OF ERROR II

**{¶31}** In his second assignment of error Appellant asserts that the trial

court erred when it denied his application to dismiss for speedy trial violations.

The critical issue here is whether Appellant's motions to exclude evidence and to

continue the December 17, 2018 trial date, both filed December 14, 2018, were

tolling events, or whether that time period should be counted toward the 270-day

limit.  If the motions were a tolling event, then the Appellant's speedy trial rights

were not violated because his trial was held on May 20, 2019 within 270 days

after his arrest.  Otherwise, his speedy trial rights would have been violated.

### LAW

The Sixth Amendment to the United States Constitution
(which is made applicable to the states through the Due Process
Clause of the Fourteenth Amendment) and Article I, Section 10
of the Ohio Constitution guarantee a criminal defendant the right
to a speedy trial; this guarantee is implemented by R.C. 2945.71,
which provides specific statutory time limits within which a
person must be brought to trial.

*State v. Smith*, 4th Dist. Lawrence No. 16CA10, 2017-Ohio-7864, ¶ 20,
citing *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887
N.E.2d 319, ¶ 10.

**{¶32}** R.C. 2945.71(C)(2) states that an accused, who is charged with a

felony, shall be brought to trial within 270 days after arrest, but each day the

accused is in jail in lieu of bail solely on the pending charge, each day counts as three days for purposes of the speedy-trial calculation.  R.C. 2945.71(E).  "[S]peedy trial time may be tolled by '[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.' " *State v. Shelby*, 4th Dist. Lawrence No. 15CA20, 2016-Ohio-5721, ¶ 26, quoting R.C. 2945.72(H).  We have recognized that if a trial court grants a continuance due to the state's failure to timely provide discovery, for purposes of a speedy trial calculation, the continuance will be charged against the state, *if* the state's delay was "willful and prejudicial to the defense."  (Emphasis added.) *State v. Wamsley*, 71 Ohio App.3d 607, 611, 594 N.E.2d 1123 (4th Dist. 1991), see also *State v. Arrington*, 6th Dist. Erie No. 16-050, 2017-Ohio-2578, ¶ 3 (citing *Wamsley*); *State v. Benge*, 12th Dist. Butler Case No. CA99-05-095, 2000 WL 485524 (Apr. 24, 2000).

ANALYSIS

**{¶33}** In addressing Appellant's first assignment of error, we concluded that the state did not willfully delay disclosure of the witnesses, nor did the delay prejudice Appellant.  Therefore, we find that the Appellant's continuance filed on December 13, 2018 and granted by the trial court, continuing the trial until March 4, 2019, was a tolling event consistent with R.C. 2945.72(H) and our holding in *Wamsley*.

**{¶34}** With that in mind, we review the record to determine if Appellant's speedy trial rights were violated.

- Appellant was incarcerated beginning August 6, 2018 through August 27, 2018 (22 days x 3= 66 days count toward the 270-day limit)

- August 28, 2018 through September 24, 2018 speedy trial time was tolled due to Defendant's Motions for Discovery and for Funds to Hire an Investigator

- September 25, 2018 through October 28, 2108 Appellant was incarcerated (34 days x 3= 102 days count toward the 270-day limit)

- October 29, 2018 through April 19, 2019 time tolled due to Appellant's Motion to Continue

- April 20, 2019 to May 20, 2019 Appellant was incarcerated (31 x 3 = 93 days count toward 270-day limit)

{¶35} Consequently, from his initial incarceration on August 6, 2018 until his trial on May 20, 2019, for purposes of a speedy-trial calculation, Appellant was incarcerated for 261 days (66+102+93), so his speedy trial rights were not violated.  Therefore, we overrule Appellant's second assignment of error.

ASSIGNMENT OF ERROR III

{¶36} In his third assignment of error, Appellant alleges that the trial court erred when it excused juror #12 prior to the completion of trial without first offering reasonable accommodation, or an opportunity to seek medical intervention.  Appellant alleges that on the last day of trial, juror #12 appeared with a bandage on his arm that was seeping blood.  Appellant's counsel requested a recess to allow the juror to obtain medical assistance.  Appellant alleges that the juror indicated that he would prefer to remain on the jury.

However, the trial court denied the motion to recess, and instead excused the juror and appointed an alternate juror to the vacant spot.

{¶37} In response, the state argues that juror #12 told the trial court that his wound had been bleeding for eight hours.  The state notes that there were two alternate jurors and argues that the trial court's decision to dismiss juror #12 and replace him with an alternate was not an abuse of discretion.

LAW

{¶38} "In case of sickness of any juror before the conclusion of the trial, the court may order that such juror receive medical attendance and shall order the payment of a reasonable charge for such medical attendance out of the judiciary fund."  R.C. 2945.30.  However, R.C. 2945.29 provides:

> If, before the conclusion of the trial, a juror becomes sick, or for
> other reason is unable to perform his duty, the court may order
> him to be discharged. In that case, if alternate jurors have been
> selected, one of them shall be designated to take the place of
> the juror so discharged.

"Thus, it is within a trial court's discretion to remove a juror unable to perform his or her duties * * *."  State v. McCrary, 4th Dist. Ross No. 16CA3568, 2017-Ohio-8701, ¶ 21.  An abuse of discretion implies that the trial court acted unreasonably, unconscionably, or arbitrarily.  Bentley v. Harper, 4th Dist. Scioto No. 18CA3858, 2019-Ohio-5420, ¶ 7, citing Lauer v. Positron Energy Resources, Inc., 4th Dist. Washington No. 13CA39, 2014-Ohio-4850, ¶ 9.

ANALYSIS

{¶39} The trial court stated on the record that he sent juror #12 to the health department to get his wound examined, and health officials advised him

that if the wound started bleeding though the bandage he needed to go to the hospital.  After the examination, the trial court asked juror #12 his thoughts and he responded:  "I mean I would prefer to stay I would like to see it through.  Uh, with that said I think that is the right medical advice because it's not going to stop [bleeding]."   After juror #12 further informed the trial court that his wound had been bleeding for eight hours and the trial court had a discussion with the parties' attorneys, he excused juror #12 and replaced him with one of the alternate jurors.  Under these facts, we do not find that the trial court's decision to dismiss juror #12 and replace him with an alternate juror was unreasonable, unconscionable, or arbitrary.  Therefore, because the trial court did not abuse his discretion, we overrule Appellant's third assignment of error.

## ASSIGNMENT OF ERROR IV

{¶40} In his fourth assignment of error, Appellant asserts that the trial court erred when it denied his motion for acquittal as to count one of the indictment, aggravated murder, because the prosecution did not prove prior calculation and design beyond a reasonable doubt.  Appellant admits that he and Thackston knew each other and their "relationship was arguably strained," but alleges that there was testimony that a week prior to Thackston's death, Thackston provided drugs to Appellant, causing one to believe that "any prior disagreement between the decedent and Appellant was done and over with." Appellant also claims he did not give thought or preparation to a weapon or the site of the killing.  He claimed that he possessed a firearm because he was extremely paranoid people were out to get him and not for the purpose of killing

Thackston.  Finally, Appellant alleges that it was an "instantaneous eruption of events" that resulted in him shooting Thackston.

{¶41} In response, the state argues that considering the totality of the evidence in a light favorable to the state, there was sufficient evidence of prior calculation and design.  For instance, Appellant and Thackston knew each other and their relationship was strained over a debt, which they argued about the day of the shooting.  Appellant had threatened to shoot Thackston over Facebook Messenger regarding the debt.  Witnesses testified that they saw Appellant using a metal detector to find a gun the night before the shooting.  One witness testified that the night before the shooting Appellant went to get his "tool" and later showed his gun to that witness. The state argues that the evidence showed that later Appellant had a gun and was arguing with Thackston, but did not shoot him at that time. Yet later the Appellant went back with the same gun, grabbed Thackston and shot him at point-blank range. The state argues that it did prove prior calculation and design beyond a reasonable doubt.

LAW

{¶42} In reviewing a record for sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Ford*, 158 Ohio St. 3d 139, 140 N.E.3d 616, ¶ 317, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶43} The aggravated murder statute, R.C. 2903.01, states: "No person shall purposely, and with prior calculation and design, cause the death of another * * *."   The phrase "prior calculation and design" by its own terms suggests advance reasoning to formulate the purpose to kill. *State v. Walker*, 150 Ohio St. 3d 409, 414, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 20.  Therefore, a killing committed "on the spur of the moment or after momentary consideration is not evidence of a premeditated decision or a studied consideration of the method and the means to cause a death." *Id.* Courts "traditionally" consider three factors in determining whether a defendant acted with prior calculation and design: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or 'an almost instantaneous eruption of events?' " *Ford*, at ¶ 139, quoting *State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997), quoting *State v. Jenkins*, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976).  However, "[t]here is no bright-line test to distinguish between the presence or absence of prior calculation and design; each case depends upon its own facts."  *Id.*, citing *Walker*, at ¶ 19.

ANALYSIS

{¶44} It is undisputed that Appellant and Thackston knew each other, and Thackston owed Appellant money. There is also evidence that their relationship was strained because of said debt, including threats by Appellant through Facebook Messenger that Appellant would shoot Thackston.  There was testimony that Appellant used a metal detector to possibly locate a firearm the

night before the shooting.  The day of the shooting, Appellant, who was

apparently armed at the time, and Thackston argued about the debt, and

Thackston struck Appellant. Later that day, Appellant entered Jean Conley's

apartment and after several minutes without saying anything, he was purportedly

asked to leave if he possessed a gun.  While it is not undisputed, there is

testimony that established that Appellant was headed toward the front door, but,

before he exited, he turned and shot Thackston at point-blank range killing him.

**{¶45}** After viewing the entire record, in a light most favorable to the

prosecution, we find that any rational juror could have found beyond a

reasonable doubt that Appellant acted with prior calculation and design when he

shot and killed Thackston.  Therefore, we overrule Appellant's fourth Assignment

of error.

## ASSIGNMENT OF ERROR V

**{¶46}** In his fifth assignment of error, Appellant asserts that the trial court

erred when it failed to apply the law of self-defense in R.C. 2901.05, as amended

by Sub.H.B. 228, which was effective March 28, 2019.  Appellant points out that

the amended version of R.C. 2901.05 shifted the burden of proving self-defense

in a criminal case from the defendant to the state, and changed the quantum of

proof from a preponderance of the evidence requiring the state to prove that

defendant did not act in self-defense, beyond-a-reasonable doubt.  Appellant

argues that

> the [amended version of R.C. 2901.05(B)(1)] clearly states that it is
> to be applied at the time of trial: "[i]f, *at the trial of a person who is*
> *accused of an offense* that involved the person's use of force
> against another, there is evidence presented  that tends to support

that the accused person used the force in self-defense…the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense[.]" (Emphasis in original)

Although he fails to provide any citations, the Appellant also argues that "numerous courts have already determined that the burden shift applies to crimes committed before March of 2019 so long as those cases were tried after the effective date." Therefore, he argues that the trial court erred in relying on the former version of R.C. 2901.05 when instructing the jury on self-defense in his case. Consequently, he argues his murder conviction should be reversed.

**{¶47}** The state argues that the First, Second, Third, Fifth, Tenth and Twelfth District Courts of Appeals have determined that the amended version of R.C. 2901.05 "is not retroactive to cases that occurred prior to the effective date," citing *State v. Koch*, 2nd Dist. Montgomery No. 2800, 2019-Ohio-4099, ¶ 103, *State v. Crowe*, 3rd Dist. Allen No. 1-19-12, 2019-Ohio-3986, ¶ 15, *State v. Redding*, 3rd Dist. Union No. 14-19-01, 209-Ohio-5302, ¶ 13, fn 1 (relied on *Koch* and *Crowe*), *State v. Debord*, 12th Dist. Clinton No. CA2019-03-003, 2020-Ohio-57, ¶ 13-14, *State v. Moore*, 5th Dist. Muskingum No. CT2019-0030, 2020-Ohio-342, ¶ 9-11, and *State v. Ward*, 10th Dist. Franklin No. 19AP-266, 2020-Ohio-465, ¶ 15.LAW

**{¶48}** " 'A trial court is obligated to provide jury instructions that correctly and completely state the law. The jury instructions must also be warranted by the evidence presented in a case. The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review.' " *State v. Moore*, 4th Dist. Lawrence No. 19CA13 2020-Ohio-4321, ¶ 16 (Citations

omitted.), quoting *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22.

**{¶49}** In this case, we must determine whether the original version of R.C. 2901.05, in existence at the beginning of Appellant's case, or the amended version, effective while Appellant's case was pending, applies. "[T]he general rule is that '[a] statute is presumed to be prospective in its operation unless expressly made retrospective.' " *State v. Simmons*, 4th Dist. Washington No. 17CA16, 2018-Ohio-2018, 112 N.E.3d 327,¶ 23,quoting R.C. 1.48. Moreover, although not cited by either party, pivotal to our analysis in this case is R.C. 1.58, which states:

> (A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:
>
> (1) Affect the prior operation of the statute or any prior action taken thereunder;
>
> (2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;
>
> (3) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;
>
> (4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.
>
> (B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

" 'R.C. 1.58(B) identifies which law to apply when a statute is amended after the commission of a crime but before sentence is imposed[.]' " *Simmons*, quoting *State v. Kaplowitz*, 100 Ohio St.3d 205, 2003-Ohio-5602, 797 N.E.2d 977, ¶ 8.

> R. C. 1.58 sets forth specific rules that apply when the General Assembly reenacts, *amends*, or repeals *statutes*. Generally, "the *substantive provisions of the former law apply to all pending prosecutions*, but the defendants receive the benefit of a reduced 'penalty, forfeiture, or punishment' in the statute as amended, unless the General Assembly expresses another intent."

*Id.*, quoting *State v. Solomon*, 1st Dist. Hamilton No. C-120044, 2012-Ohio-5755, 983 N.E.2d 872, ¶ 16, citing R.C. 1.58.

ANALYSIS

**{¶50}** In pertinent part, Am.Sub. H.B. 228 added the following language to R.C. 2901.05:

> (B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

**{¶51}** There are several Ohio appellate districts that have held that this amendment to R.C. 2901.05, which became effective *after* the defendants' trials, did not apply retroactively to their convictions.  See e.g. *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, *State v. Wallace-Lee*, 2nd Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, *State v. Whitman*, 5th Dist. Stark No. 2019CA94, 2019-Ohio-4140.  We can find only two Ohio appellate districts that

have addressed the particular issue of whether R.C. 2901.05 as amended by Am.H.B. 228, which became effective while their cases were *pending* in the trial court, applied to their cases.

{¶52} The first is *State v. Gloff*, 12th Dist. Clermont 2020-Ohio-3143, 155 N.E.3d. 42, in which the court held that the amended version of R.C. 2901.05, which became effective approximately two weeks before his trial, applied to his trial based on the following analysis:

> Gloff argues that the retroactivity analysis is unnecessary because the language of the amended statute refers to application 'at the trial of a person.' Thus, Gloff argues that the H.B. 228 amendment focuses on when the trial is held, as opposed to when the offense was committed. As previously noted, the trial began two days before the effective date of the amendment and concluded one day after the effective date of the amendment.

> Following review, [the Twelfth District Court of Appeals] agree[d] with Gloff's position. The H.B. 228 amendment applies prospectively to *trials.* The pertinent amendment does not concern the conduct giving rise to the offense but relates to the applicable burden of proof for the affirmative defense of self-defense. Under the new amendment, if self-defense evidence is presented at trial, the prosecution must then prove, beyond a reasonable doubt, that the defendant did not use the force in self-defense.

{¶53} In contrast, the Tenth District Court of Appeals has held that the amended version of R.C. 2901.05 does not apply retroactively to a criminal case that is pending in the trial court because the general assembly did not expressly make the amended version of R.C. 2901.05 retroactive to the Appellant's pending case. *State v. Zafar*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶ 30-33.

**{¶54}** The difference between an amended statute that becomes effective *after* a defendant's conviction, and an amended statute that becomes effective while a defendant's case is *pending* in the trial court, is a distinction that matters in determining the applicability of the amended statute to the defendant's conviction/case. The applicability of a statute or amendment that is effective after a conviction necessarily involves the two-part retroactivity test. See *Pratte v. Stewart*, 125 Ohio St. 3d 473, 2010-Ohio-1860, 929 N.E.2d 415, ¶ 30, 36-37 (A court must first ask the threshold question of whether the General Assembly expressly intended the statute to apply retroactively. If not, then the statute applies prospectively only. But, if the answer is yes, then the statute may be applied retroactively consistent with the Constitution, only if the statute is remedial in nature). However, if a statute is amended and becomes effective while the defendant's case is pending in the trial court, then its applicability to the defendant's case is guided by R.C. 1.58. *Kaplowitz*, 100 Ohio St.3d 205, 2003-Ohio-5602, 797 N.E.2d 977, ¶ 8.

**{¶55}** R.C. 2901.05 does not set out a penalty, punishment or forfeiture, but instead defines the substantive law of self-defense. Therefore, absent an express indication that the General Assembly intended otherwise, R.C. 1.58(B), instructs a trial court to apply former R.C. 2901.05 to a pending criminal case because under R.C. 1.58 *substantive provisions of the former law apply to all pending prosecutions*.

**{¶56}** Appellant argues that the "at trial" language in amended R.C. 2901.05, indicates that the General Assembly expressly intended the amended

version of R.C. 2901.05 apply to pending cases, i.e. it should have been applied in Appellant's case.  We disagree.  When the phrase "at trial" is read in context with the remainder of the sentence in the statute, we find that the language communicates no express indication that the amended version of the statute applies to pending cases.  Rather, it appears to indicate, from a timing perspective at trial when the state is obligated to submit evidence in an attempt to prove that the defendant did not act in self-defense.  In other words, we interpret the "at trial" language as indicating that it is only after defendant presents evidence "at trial" that "tends to support" that he or she "used the force in self-defense," does the state need to submit its evidence contra.

{¶57} Therefore, because R.C. 1.58 instructs us that the pre-HB 228 version of R.C. 2901.05 applied at Appellant's trial, and the General Assembly has not expressly indicated otherwise, the trial court did not error when it instructed the jury regarding Appellant's claim of self-defense.  Accordingly, because the trial court did error, we overrule appellant's fifth assignment of error.

## ASSIGNMENT OF ERROR VI

{¶58} In his sixth assignment of error, Appellant asserts that the trial court erred when it instructed the jury on consciousness of guilt, as sufficient evidence was not presented at trial to warrant such an instruction.  Appellant alleges that "very little of [his] actions after the shooting would indicate he was trying to resist arrest or conceal himself in any manner."  In fact, Appellant alleges that the arresting officer testified that Appellant was apprehended in the middle of the road in broad daylight.

{¶59} In response, the state argues that Appellant ran from the scene after the shooting, changed his clothes, and hid. Consequently, the state argues that the consciousness of guilt instruction was warranted.

LAW

{¶60} "[J]ury instructions 'must be based upon the actual issues in the case as presented by the evidence.' " *State v. Dyer*, 4th Dist. Scioto No. 07CA3163, 2008-Ohio-2711, ¶ 11, quoting *State v. Tompkins*, 2nd Dist. Clark No. 95-CA-0099, 1996 WL 612855 (Oct. 25, 1996) *3. However, " '[i]t is within the sound discretion of the trial court to determine whether the evidence presented at trial is sufficient to require a particular jury instruction.' " *State v. Lewis*, 4th Dist. Ross No. 14CA3465, 2016-Ohio-1592, 49 N.E.3d 371, ¶ 18, quoting *State v. Ward,* 168 Ohio App.3d 701, 2006-Ohio-4847, 861 N.E.2d 823, ¶ 20 (4th Dist.). An abuse of discretion implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *State v. Moman*, 4th Dist. Adams No. 16CA1022, 2017-Ohio-453, ¶ 13, citing *Sivit v. Village Green of Beachwood, L.P.*, 143 Ohio St.3d 168, 2015-Ohio-1193, 35 N.E.3d 508, ¶ 9. The Tenth District Court of Appeals held that "[a]n inference could be drawn from" a defendant leaving the scene of a shooting and going to two different residences before turning himself into the authorities that he "fled the scene and continued to flee because of a consciousness of guilt." *State v. Shine-Johnson*, 10th Dist. Franklin No. 17AP-194, 2018-Ohio-3347, 117 N.E.3d 986, ¶ 48.

ANALYSIS

**{¶61}** In the instant case, Appellant ran from the scene of the shooting to his apartment, changed clothes, and subsequently disappeared into the woods. The mere fact that he was later arrested while walking on the side of the road does not alter his prior actions. Under these facts, we find that the trial court did not abuse its discretion in instructing the jury on Appellant's consciousness of guilt. Therefore, we overrule Appellant's sixth assignment of error.

ASSIGNMENT OF ERROR VII

**{¶62}** In his seventh assignment of error, Appellant asserts that the trial court erred when it failed to advise him that he was subject to a period of post-release control, and, as a result, his sentence is void and he is entitled to a new sentencing hearing. Appellant argues that the express language of R.C. 2967.28(B)(1) requires post-release control and failure to include it in the sentence renders the sentence void under *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, ¶ 22.

**{¶63}** The state does not appear to dispute that the trial court failed to advise Appellant of post-release control. Instead, the state cites *State v. Wilson*, 4th Dist. Lawrence No. 16CA12, 2018-Ohio-2700 in support of finding that error was not prejudicial to Appellant.

**{¶64}** In *Wilson*, the trial court failed to properly inform the Appellant of post-release control. However, in *Wilson* the court of appeals found that the trial court's failure was moot because the Appellant was serving a life sentence without parole. As Appellant points out in his reply brief, his sentence is

distinguishable from the defendant in *Wilson* because he is serving a life sentence with the possibility of parole after his 28 years. We agree with the Appellant, *Wilson* does not persuade us to find that the trial court's failure to properly impose post-release control is moot.

{¶65} In *State v. Pierce*, 4th Dist. Pickaway No. 18CA4, 2018-Ohio-4458, ¶ 19, this court recently held that a "[f]ailure to address and impose post-release control during the sentencing hearing constitutes a notification error" that requires the appellate court to "set aside" "that portion" of the sentence," and to remand the matter "to the trial court for a resentencing hearing in accordance with R.C. 2929.191." Therefore, we sustain Appellant's seventh assignment of error.

## ASSIGNMENT OF ERROR VIII

{¶66} In his eighth assignment of error, Appellant asserts that his convictions for aggravated murder, murder, and felonious assault were against the manifest weight of the evidence, as Appellant was acting in self-defense. Appellant argues that the "uncontroverted" testimony showed that Appellant attempted to leave the apartment when he was rushed from behind by Thackston. Appellant alleges that he was beaten by multiple people and an arresting officer confirmed that Appellant had injuries to his face at the time he was arrested. Appellant also alleges that the physical evidence indicated self-defense as well, including: shell casing near the door (evidence Appellant was attempting to leave), broken eyeglass lens found (supporting Appellant's injury to his face), and the gunshot was a contact wound and projectile travelled

downward through Thackston's body (consistent with testimony that Appellant turned and shot Thackston). Therefore, Appellant argues the evidence established he acted in self-defense because he was in fear for his life when he was bear hugged from behind by Thackston. Accordingly, Appellant argues that his convictions are against the manifest weight of the evidence.

**{¶67}** The state argues that the evidence established that Appellant had made numerous threats that he would shoot Thackston, Appellant acquired his "tool" (gun) the night before the shooting, and Appellant, in fact, shot and killed Thackston the next day in Blevins' apartment. The state argues that the evidence indicated that the Appellant had a "slightly blackened eye," but it does not support Appellant's assertion that he had been beaten by several people because he had no other marks or difficulty moving, breathing, talking, etc. Therefore, the state argues that Appellant's conviction is not against the manifest weight of the evidence.

LAW

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."

*State v. Lechner*, 4th Dist. Highland No. 19CA32019-Ohio-4071, ¶ 41-42. However, "generally the weight and credibility of evidence are determined by the jury." *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, citing *State v. Kirkland,* 140 Ohio St.3d 73, 15 N.E.3d 818, 2014-Ohio-

1966, 15, at ¶ 132. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23 citing *State v. Colquitt,* 188 Ohio App.3d 509, 2010-Ohio-2210, 936 N.E.2d 76, ¶ 10, fn. 1 (2nd Dist.); *State v. Nichols,* 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (4th Dist.1993); *State v. Caldwell,* 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (4th Dist.1992). Consequently, "[w]e defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Smith*, 4th Dist. Gallia No. 17CA5, 2017-Ohio-8657, ¶ 6 citing *State v. Smith*, 4th Dist. Lawrence No. 16CA10, 2017–Ohio–7864, ¶ 40.

**{¶68}** Having resolved Appellant's fifth assignment of error by holding that the former version of R.C. 2901.05 applied to Appellant's case, we review this assignment of error under former R.C. 2901.05, which provides that the defendant bears the burden of proving self-defense by a preponderance of the evidence, that " ' "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." ' " *State v. Bundy*, 4th Dist. Pike No. 11CA818, 2012-Ohio-3934, ¶ 37, 974 N.E.2d 139, quoting *State v. Goff,* 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, ¶ 36, quoting *State v. Thomas,* 77 Ohio St.3d 323, 326, 673

N.E.2d 1339 (1997). "The 'elements of self-defense are cumulative. * * * [Thus, if the defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense.' " *Id.*, quoting *State v. Jackson,* 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986) (emphasis sic). *Accord State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 73; *State v. Hargrave,* 4th Dist. No. 11CA907, 2012-Ohio-798, 2012 WL 642680, ¶ 16.

ANALYSIS

{¶69} In his brief, and at closing argument, Appellant's attorney argued that Appellant was about to exit Conley's apartment when "[t]he onslaught began," relating to the jury how Appellant told Detective Brewer that four or five people jumped him and beat him up to the extent that his glasses were broken and he got a black eye. He further argued that there is "uncontroverted testimony" that Thackston "came out from that room where he was hiding" and pulled Appellant "back into the apartment" and Appellant shot Thackston in self-defense.

{¶70} Aside from *Appellant*'s statements to the police, there is no testimony or evidence that suggests that Appellant was attacked by multiple assailants. Blevins did testify that Thackston grabbed Appellant from behind as Appellant was purportedly exiting Conley's apartment, but Conley gave conflicting evidence testifying that she never saw Thackston grab Appellant just seconds before the shooting. Determining the credibility of this testimony was the jury's duty.

{¶71} Aside from the testimony of Blevins and Conley, it is undisputed that Appellant had an ongoing dispute regarding money that Thackston owed Appellant. Appellant had threatened Thackston regarding this debt. Appellant had apparently acquired a gun the night before the murder, and Appellant shot Thackston in the abdomen at point-blank range. This evidence could infer that Appellant planned to kill Thackston prior to the shooting.

{¶72} Accordingly, after reviewing the entire record, we do not find the jury clearly lost its way in not finding that Appellant acted in self-defense so as to create such a manifest miscarriage of justice that his convictions must be reversed. Therefore, we overrule Appellant's eighth assignment of error.

## ASSIGNMENT OF ERROR IX

{¶73} In his ninth assignment of error, Appellant asserts that cumulative errors during his trial deprived him of a fair trial and requires a reversal of his convictions. We overruled all of Appellant's assignments of error, except for assignment number seven, which requires remand under R.C. 2929.191. Therefore, we overrule Appellant's ninth assignment of error.

## CONCLUSION

{¶74} We overrule all of Appellant's assignments of error, except for his seventh assignment of error in which we find that the trial court did not properly notify him of post-release control. Therefore, we affirm Appellant's convictions, but remand this matter to the trial court for the limited purpose of notifying Appellant of post-release control consistent with R.C. 2929.191.

**JUDGEMENT AFFIRMED IN PART AND REVERSED IN PART, AND**

**CAUSE REMANDED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

P.J., Smith and J., Hess:  Concur in Judgment and Opinion.

For the Court,


BY:      _____
Kristy S. Wilkin, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**